441 F.2d 165
 UNITED STATES of America and James M. Bittman, Petitioners-Appellees-Cross Appellant,
v.
Roger NEWMAN, as President of Imperial Hotel, Inc., and Imperial Hotel, Respondents-Appellants-Cross Appellees,
v.
Donald A. POLLACK, Intervenor-Appellant-Cross Appellee.
UNITED STATES of America and James M. Bittman, Petitioners-Appellees-Cross Appellants,
v.
Gene SNYDER, individually, etc., et al., Respondents,
v.
Donald A. POLLACK, Intervenor-Appellant-Cross Appellee.
UNITED STATES of America and Ronald L. Pomerantz, Petitioners-Appellees-Cross Appellants,
v.
Ruth ROTHMAN, Respondent,
v.
Donald A. POLLACK, Intervenor-Appellant-Cross Appellee.
 No. 28046.
 United States Court of Appeals, Fifth Circuit.
 April 14, 1971.
 
 Paul P. Lipton, Robert E. Meldman, Milwaukee, Wis., for appellants.
 Johnnie M. Walters, Asst. Atty. Gen., John P. Burke, Lee A. Jackson, Joseph M. Howard, Attys., H. D. Shapiro, Trial Atty., Dept. of Justice, Washington, D. C., William A. Meadows, Jr., U. S. Atty., Morton Orbach, Asst. U. S. Atty., Miami, Fla., for appellees.
 Talianoff, Waller & Berger, Miami Beach, Fla., Wilson, Abramson & Rosenthal, Miami, Fla., for other interested parties.
 Before JOHN R. BROWN, Chief Judge, and COLEMAN and CLARK, Circuit Judges.
 JOHN R. BROWN, Chief Judge:
 
 
 1
 This case presents aspects of the procedures used to enforce an internal revenue summons. It involves not only the rights of the nontaxpayer witnesses summoned but those of the intervenor taxpayer as well. To wipe out an already worn out cliche, the slate is clean, but not because of a lack of learning earlier recorded. Rather the slate has been wiped clean of a good deal — including, undoubtedly, some of our own declarations in this prolific field. What brings this all about is the decision we have been waiting for in Donaldson,[1] which affirmed our Mercurio decision.[2]
 
 
 2
 In August 1968, the IRS was conducting an investigation into the tax liability of Taxpayer Donald Pollack for the years 1963-65. It served summonses under the authority of 26 U.S.C.A. § 7602[3] to compel the production of records in the possession of Ruth Rothman,[4] Ethel and Gene Snyder,[5] and Roger Newman as president and on behalf of the Imperial Hotel, Inc.[6]
 
 
 3
 In December 1968 the IRS sought judicial enforcement of the summonses under 26 U.S.C.A. § 7402(b) and § 7604 (a).[7] To each petition was appended an affidavit that Special Agent Bittman (Agent) was conducting an investigation to determine the correctness of Taxpayer's returns, the failure of the summoned parties to respond, and the necessity of these records to ascertain the tax liability of Taxpayer.
 
 
 4
 The District Court issued an order directing the respondents to show cause why the summonses should not be enforced.[8] Newman for himself and for Imperial Hotel contested enforcement.[9] Following the traditional pattern under the Civil Rules, Newman responded paragraph by paragraph. He admitted each allegation except that he expressly disclaimed knowledge sufficient to permit him to affirm or deny the allegations that this
 
 
 5
 (i) "* * * is a proceeding brought under authority of Sections 7402(b) and 7604(a) of the Internal Revenue Code of 1954, to judicially enforce an Internal Revenue Service summons"
 
 
 6
 and that
 
 
 7
 (ii) "* * * petitioner, [Agent] Bittman, is conducting an investigation for the purpose of ascertaining the correctness of income tax returns filed by Donald A. Pollack for the years 1963 through 1966."
 
 
 8
 To this, perhaps out of a nostalgic hope that a federal court would heed state pleading practices, he threw in for good measure a blunderbuss denial of all that he had not expressly admitted or qualified.
 
 
 9
 Taxpayer sought leave to intervene. In the proposed answer to the petition for enforcement, Taxpayer alleged that Agent was in bad faith in issuing summonses, that he was simply looking for evidence to use in a criminal proceeding, that the summons to Newman was overly broad and lacking in relevance to Taxpayer's liability, that Agent lacked personal knowledge of the records requested in the summons, and that the summons would violate the Fourth and Fifth Amendment rights of Taxpayer.
 
 
 10
 The District Court granted each petition to enforce the summonses. As for the intervention of Taxpayer, the Court allowed intervention and then prescribed what was described as a limited appearance in the proceedings before Agent, although this appearance turned out to be one giving Taxpayer a ringside seat, in which Taxpayer could not only see, look, and listen, but also could speak though no one was bound to listen and certainly not to act.[10]
 
 
 11
 Taxpayer and Newman — this always includes the hotel — appeal from the decree of enforcement,[11] and the Government cross appeals from the Judge-imposed surveillance rights under Paragraph 2 (see note 10, supra).
 
 
 12
 There is always the temptation to strike out on the "big issue" but we resist this importunity, not because we would lessen the words for posterity, but rather because the little issues shrink the big ones to like size.
 
 
 Newman's Appeal
 
 
 13
 Newman[12] asserts that before the summons can be enforced, he must be afforded an evidentiary hearing conducted under the Federal Rules of Civil Procedure at which he must be allowed discovery. We reject these contentions and hold that the show cause procedures used to enforce the summonses were adequate, proper, and reveal nothing requiring judicial exploration.
 
 
 14
 Of course Powell[13] requires the Government[14] to "show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed — in particular, that the `Secretary or his delegate,' after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect." 379 U.S. at 57-58, 85 S.Ct. at 255, 13 L.Ed.2d at 119. But that is a long way from saying as did the discredited Local 174[15] momentarily[16] that the summoned witness (or taxpayer) can grind it all to a halt if he simply challenges the summons in the enforcement proceeding.
 
 
 15
 Before the Government is called upon to make this showing, the summoned party must raise in a substantial way the existence of substantial deficiencies[17] in the summons proceedings. Only when so raised is there any need for an evidentiary hearing or — in anticipation of it — the traditional pretrial discovery mechanisms which Roundtree[18] recognizes with appropriate limitations.
 
 
 16
 To ascertain whether there is any basis for questioning the summons, the traditional show cause order is an effective and appropriate procedural tool. Indeed, it harmonizes procedure with the substantive principle that puts the burden on the summoned party "of showing an abuse of the court's process," Powell (note 17, supra). In no way does its use extinguish the adversary proceeding which the decisions call for. Rather it is a principal means by which the enforcing Court can determine whether there is anything to "hear" and if so to give proper scope and direction to an orderly, but expeditious, adjudication of the points in controversy. And contrary to the contention of both Newman and Taxpayer, that its use somehow destroys the jurisdiction of the enforcing Court,[19] the show cause device is proper and in keeping with the Federal Rules of Civil Procedure since F.R.Civ.P. 81(a) (3) expressly recognizes that in enforcement proceedings the rules apply "except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings" (emphasis added). And Donaldson spells out that the District Court "may limit the application of the [Federal] rules in a summons proceeding." 400 U.S. at 528-529, 91 S.Ct. at 541, 27 L.Ed.2d at 588.
 
 
 17
 Here the response to the show cause order was a juridical blank. The answer admitted all save the inconsequential "lack of knowledge" allegations. Not even in the most conclusory terms did Newman attack the summons proceedings along the Powell lines (see note 17, supra) by charging that there was an improper purpose behind the summons, that there was any harassment, that there was any lack of good faith, or that the summons was overreaching or vague.[20] Nor was there even any claim that the summons to supply the documents (see note 6, supra) was overreaching, imposed unreasonable burdens on the producer, or would be difficult or impossible to comply with.
 
 
 18
 Newman did not raise a single issue. If the objection of the witness is to be helpful to the taxpayer the witness must bear the dual burden of raising and establishing the claimed deficiencies. Otherwise it is the hand of Esau but the voice of Jacob.
 
 
 19
 The District Court's order enforcing the summons as to Newman is correct and affirmed.
 
 
 Taxpayer's Intervention
 
 
 20
 Taxpayer appeals from the order enforcing the summons as to each of the named witnesses. Basic to this is the question of Taxpayer's right to be in the case at all as an intervenor. The Government urges on cross appeal (i) that the District Court erred in permitting intervention in the judicial enforcement proceeding and (ii) Taxpayer should not have granted Paragraph 2 surveillance rights in the agency proceedings. We uphold the Government expressly on (i) and by so doing extinguish Paragraph 2 of the order.
 
 
 21
 In the hearing to determine intervention in the enforcement proceedings, Taxpayer disclaimed any doctor-patient, attorney-client, or accountant-client relationship with the respondents. His only alleged interest in the records owned and possessed by the respondents is that the records related to his tax liability and that the investigation has the potential of the recommendation of a criminal prosecution of Taxpayer.
 
 
 Intervention of Right
 
 
 22
 In granting intervention we are clear from the language of the motion[21] and from the terms of the order[22] that the District Judge treated and allowed it as an intervention of right under F.R.Civ. P. 24(a) (2).[23]
 
 
 23
 As did the answer of Newman, Taxpayer's proposed (and later filed) answer admitted all allegations save the two insufficient to deny or affirm replies. But it then went on affirmatively to assert bad faith by Agent and that the purpose of the summons proceeding was solely to obtain evidence for criminal prosecution and consequently the summons was not issued for any purposes permitted by §§ 7602, 7402(b), 7604(a).
 
 
 24
 Decision on intervention of right is easy. If — and the if is a very big one — there is anything left for such intervention as a "protectable interest" beyond a summons for evidence in a case previously recommended for criminal prosecution,[24] we are positive that the allegations of this answer, treated with all of the indulgence permitted, cf. Barber v. Motor Vessel "Blue Cat", 5 Cir., 1967, 372 F.2d 626, 1969 A.M.C. 211, are insufficient. We say positive because the allegations found insufficient in Donaldson are not just similar — they are identical — with those stated in Taxpayer's answer with respect to the critical issues here.[25] This is, of course, no accident.[26]
 
 
 25
 Since the Supreme Court said that there could be no mandatory intervention for Donaldson, we must conclude that there can be none for Taxpayer here.
 
 
 Permissive Intervention
 
 
 26
 Fleeing before Donaldson's rejection of intervention of right, Taxpayer falls back on permissive intervention under F.R.Civ.P. 24(b) (2).[27] The argument has three aspects. First, Donaldson deals with a denial of intervention, not the grant of it. Second, conceding, as we have held, the Judge treated this one as a mandatory intervention, the granting of it with the consequent surveillance privileges indicates that he would have allowed it as a permissive one. And third, in any event, Taxpayer should be allowed an opportunity on remand to persuade the Judge to grant intervention in the exercise of his discretion.
 
 
 27
 We need not explore these separately because Donaldson — upholding a denial of intervention — compels rejection of intervention on discretionary grounds. In the course of its analysis of the Reisman dictum and the limitation of it to "the situation of a pending criminal charge or, at most, of an investigation solely for criminal purposes," (see Note 24, supra), the Court makes this decisive declaration:
 
 
 28
 "Any other holding, of course, would thwart and defeat the appropriate investigatory powers which the Congress has placed in `the Secretary or his delegate.'"
 
 
 29
 400 U.S. at 533, 91 S.Ct. at 544, 27 L. Ed.2d at 591.
 
 
 30
 Bearing in mind that the allegations here are the identical ones there, this is a flat holding that on charges of this kind intervention by a taxpayer in a summons proceeding against a third party witness would thwart and defeat the policies and mechanisms ordained by Congress. It is the intervention in such situation, not the technical basis — as of right or permissive — for permitting it which thwarts and defeats. Clearly the Court did not mean to allow a single District Judge in the exercise of a wide and often undefinable discretion to ignore if not judicially repeal policies prescribed by the Congress.
 
 
 31
 Intervention in these circumstances is to be rejected, not by retrenching from the liberal application of the Federal Rules which the amendments reflected, see Atlantis Development Corp. v. United States, 5 Cir., 1967, 379 F.2d 818. Rather it is because valid Congressional policies would be adversely affected if this "outsider" were permitted to take over the controversy significantly. To permit this "would unwarrantedly cast doubt upon and stultify the Service's every investigatory move." Donaldson, 400 U.S. at 531, 91 S.Ct. at 543, 27 L. Ed.2d at 589-590.
 
 
 Surveillance Privileges
 
 
 32
 Since we hold that neither mandatory nor permissive intervention could be allowed in this case it means that Taxpayer ceases to be a party of any kind to the Court enforcement proceedings. With this falls the Paragraph 2 surveillance privileges. This is especially so since none of the summoned witnesses — the sole respondent parties — raised any litigatable objections or sought or showed any need for any other person, counsel or otherwise, to be present.
 
 
 33
 Additionally we think it appropriate to take notice of the concurring opinion of Mr. Justice Douglas in Donaldson which asserts that in the summons hearing before the agent, Supreme Court "decisions, however, make clear that the taxpayer has the right to be present at the hearing and to confront and cross-examine witnesses and inspect evidence against him," 400 U.S. at 538, 91 S.Ct. at 546, 27 L.Ed.2d at 593. But from our position as a subordinate appellate Court it is, at best, a prediction as witness the concurring opinion's reliance on dissenting opinions save for Jenkins v. McKeithen, 1969, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404.
 
 
 34
 In Powell, supra, the Supreme Court observed that an internal revenue investigation is analogous to one conducted by a grand jury or by the Federal Trade Commission. Both are primarily investigatory and inquisatorial unlike the Supreme Court ruled the administrative body to be in Jenkins, supra. Like the grand jury, the Internal Revenue Service "merely investigates and reports. It does not try." Hannah v. Larche, 1960, 363 U.S. 420, 449, 80 S.Ct. 1502, 1518, 4 L.Ed.2d 1307, 1325. And of that institution the Court went on to state:
 
 
 35
 "it would be profitable at this point to discuss the oldest and, perhaps, the best known of all investigative bodies, the grand jury. It has never been considered necessary to grant a witness summoned before the grand jury the right to refuse to testify merely because he did not have access to the identity and testimony of prior witnesses. Nor has it ever been considered essential that a person being investigated by the grand jury be permitted to come before that body and cross-examine witnesses who may have accused him of wrongdoing. Undoubtedly, the procedural rights claimed by the respondents have not been extended to grand jury hearings because of the disruptive influence their injection would have on the proceedings * * *."
 
 
 36
 363 U.S. at 449, 80 S.Ct. at 1518, 4 L. Ed.2d at 1325.
 
 
 37
 For similar practical considerations the Court has had no difficulty in accommodating the need for effective exploitation of Congressional directives with the demands of the Constitution. Thus, for example, with the Federal Trade Commission whose function was characterized as the "power of inquisition"[28] it has squarely held:
 
 
 38
 "The Federal Trade Commission could not conduct an efficient investigation if persons being investigated were permitted to convert the investigation into a trial. We have found no authorities suggesting that the rules governing Federal Trade Commission investigations violate the Constitution * * *."
 
 
 39
 363 U.S. at 446, 80 S.Ct. at 1517, 4 L. Ed.2d at 1324.
 
 
 40
 See also In re Groban, 1957, 352 U.S. 330, 77 S.Ct. 510, 1 L.Ed.2d 376, dealing with an investigation before a fire commissioner.
 
 
 41
 An important factor back of this approach is of course the fact that if accusatory proceedings are begun the person concerned "will be accorded all the traditional judicial safeguards at a subsequent adjudicative proceeding * * *." 363 U.S. at 446, 80 S.Ct. at 1517, 4 L.Ed.2d at 1324. And this applies in the context of an IRS summons situation as Donaldson makes clear.
 
 
 42
 "What is obviously meant there is a significantly protectable interest. And the taxpayer, to the extent that he has such a protectable interest, as, for example, by way of privilege, or to the extent he may claim abuse of process, may always assert that interest or that claim in due course at its proper place in any subsequent trial. Cf. United States v. Blue, 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966)."
 
 
 43
 400 U.S. at 531, 91 S.Ct. at 542, 27 L. Ed.2d at 589.
 
 
 44
 In today's complex social and governmental structure in which Congressional policies are effectuated through agencies having investigatory functions the results of which most often lead to quasi civil sanctions but which not infrequently lead to criminal prosecutions, this essential role would be frustrated by requiring those persons not parties who might be later affected to be allowed to take an active part through private counsel in such proceedings. Often such proceedings involve a nationwide industry or industry practice and can start out with no fixed goal since many such agencies "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." Morton Salt, 338 U.S. at 642-643, 70 S.Ct. at 364, 94 L.Ed. at 411.
 
 
 45
 It would be doctrinaire to single out IRS summons proceedings.[29]
 
 
 Summary
 
 We hold:
 
 46
 (i) The orders enforcing all of the summonses and denying discovery are affirmed.
 
 
 47
 (ii) Paragraph 2 of the orders granting verbal, visual and audible surveillance appearance privileges to Taxpayer is reversed.
 
 
 48
 (iii) The orders allowing Taxpayer to intervene are reversed.
 
 
 49
 Affirmed in part; reversed in part.
 
 
 
 Notes:
 
 
 [1]
 Donaldson v. United States, 1971, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580
 
 
 [2]
 It appeared under the name of United States v. Mercurio, 5 Cir., 1969, 418 F.2d 1213
 
 
 [3]
 "For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized —
 (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
 (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
 (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry."
 
 
 [4]
 The Rothman summons called for the following documents: "Each and every document pertaining to the transaction relating to CK #28121 from Washington Federal Savings & Loan Association in the amount of $2,013.12, dated August 2, 1965, and negotiated to Donald A. Pollack."
 
 
 [5]
 The Snyder summons requested the following documents:
 "1. Records of loans received from Donald A. Pollack made or repaid during the years 1963 through 1966. Such records should include cancelled checks, deposit records, collateral, repayment records, and correspondence.
 
 
 [2]
 Records of real estate transactions with Donald A. Pollack during the years 1956 through 1966. Such records should include deeds, mortgages, closing statements, checks, receipts, offers to purchase and correspondence."
 
 
 [6]
 The records specified in the Newman summons were as follows:
 "The following records relate to the years 1963, 1964, 1965, 1966:
 
 
 [1]
 Retained copies of corporate income tax returns for the years 1962 through 1966;
 
 
 [2]
 Corporate minute book;
 
 
 [3]
 Corporate bank accounts including bank statements, cancelled checks, deposit tickets, and check stub book;
 
 
 [4]
 Corporate ledgers and journals showing income and expenses, drawing accounts, assets, liabilities, loan accounts and capital accounts;
 
 
 [5]
 Corporate stock records book showing stock purchases and redemptions;
 
 
 [6]
 Correspondence between corporate officers and Donald A. Pollack."
 
 
 [7]
 
 "If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data."
 26 U.S.C.A. § 7402(b).
 "If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data."
 26 U.S.C.A. § 7604(a).
 
 
 [8]
 The Court had enjoined compliance pending the outcome of the enforcement proceedings
 
 
 [9]
 The Snyders filed no answer, and Rothman answered expressing a willingness to come forth with the information should the Court order it
 
 
 [10]
 The decree provided:
 "1. That applicant's (Taxpayer's) leave for intervention be granted under the rationale of Reisman v. Caplin, 375 U.S. 440 [84 S.Ct. 508, 11 L.Ed.2d 459] (1963).
 
 
 [2]
 That applicant's (Taxpayer's) intervention and the rights accruing thereunder, be restricted in scope to his appearance at the Respondent's appearance before the Special Agent, hereinafter ordered, where his right shall be limited to voicing his objections to the production of the records and testimony called for in the summonses issued in the above captioned cases. It is provided, however, that intervenor's objections will not be allowed to interrupt or delay the proceedings, that the Special Agent shall not rule upon the objections, that the intervenor's objection shall not excuse the Respondents from producing any item objected to, nor from answering any question objected to, and that intervenor's objections shall not be heard, nor otherwise passed upon by this Court so long as the intervenor's tax liability remains in the investigative stage. Nor shall the intervenor be otherwise allowed to delay the enforcement of summons subject to the captioned cases through motions, or other such procedures. It is further provided, however, that intervenor's failure to voice his objection before Special Agent shall not affect his right to raise objections to the adduced records and testimony at a later proceeding
 
 
 [3]
 That intervenor's oral request for discovery in the captioned cases is denied."
 
 
 [11]
 See notes 9,supra and 12, infra, as to Rothman and the Snyders.
 
 
 [12]
 Originally Taxpayer sought to intervene in the enforcement proceedings of all three respondents. In Taxpayer's Supplemental Memorandum we are informed that he "no longer seeks a judicial hearing to contest enforcement of the summonses issued to Snyder and Rothman." And for a consequent lack of case or controversy, so evaporates Paragraph 2 of the District Court order (see note 10,supra) granting surveillance privileges in the agency proceeding to investigate the records of Snyder and Rothman. Our discussion henceforth will concern itself solely with the proceedings against Newman.
 
 
 [13]
 United States v. Powell, 1964, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112
 
 
 [14]
 Although the proceedings as a matter of unarticulated practice usually include (as done here) the agent signing the summons as a named party, we regard the Government as the real movant
 
 
 [15]
 Local 174, etc. v. United States, 9 Cir., 1956, 240 F.2d 387
 
 
 [16]
 We agree with the Government's dissection of that case
 "The majority opinion in Local 174, etc., held that the Government must make a specific showing of relevance on each document which is the subject of an administrative summons. It is generally agreed that the holding in Local 174 was overruled sub silentio by Civil Aeronautics Board v. Hermann, 353 U.S. 322 [77 S.Ct. 804, 1 L.Ed.2d 852] (1957), reversing Hermann v. Civil Aeronautics Board, 237 F.2d 359 (C.A. 9th, 1956). See Foster v. United States, 265 F.2d 183, 188 (C.A.2d, 1959), certiorari denied, 360 U.S. 912 [79 S.Ct. 1297, 3 L.Ed.2d 1261]. See also Federal Communications Commission v. Schreiber, 381 U.S. 279, 290 [85 S.Ct. 1459, 14 L.Ed.2d 383] (1965) (citing Civil Aeronautics Board v. Hermann for the principle that latitude must be allowed to administrative agencies in devising their own procedures for discharging their duties)."
 (Government Brief, p. 22).
 
 
 [17]
 It was epitomized in Powell:
 "It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused. Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation. The burden of showing an abuse of the court's process is on the taxpayer * * *." (Emphasis added).
 379 U.S. at 58, 85 S.Ct. at 255, 13 L.Ed. 2d at 119-120.
 
 
 [18]
 United States v. Roundtree, 5 Cir., 1969, 420 F.2d 845, 851-852
 
 
 [19]
 They stress New Hampshire Fire Insurance Co. v. Scanlon, 1960, 362 U.S. 404, 80 S.Ct. 843, 4 L.Ed.2d 826; Daly v. United States, 8 Cir., 1968, 393 F.2d 873, 875-876; and Application of Howard, 3 Cir., 1963, 325 F.2d 917, 919
 
 
 [20]
 We need not consider Taxpayer's objections that the summons was issued in bad faith, that it was overly broad and vague, and that the Fourth and Fifth Amendment rights of Taxpayer were violated. Only Taxpayer raised these objections. The summoned parties did not and Taxpayer cannot raise objections which are those only of the witness. See, e. g., DeMasters v. Arend, 9 Cir., 1963, 313 F.2d 79; Hudson v. United States, 5 Cir., 1952, 197 F.2d 845; Foster v. United States, 2 Cir., 1959, 265 F.2d 183, cert. denied, 360 U.S. 912. 79 S.Ct. 1297, 3 L.Ed.2d 1261; Stone v. Williams, 1 Cir., 1966, 356 F.2d 934. In effect we said as much inMercurio by observing:
 "It would seem, upon the most casual observance of this situation, that if the United States were seeking to obtain these records in support of an actual prosecution, following indictment, appellant would have no basis for seeking to have the indictment quashed on the ground of a violation either of Fourth or Fifth Amendment rights, since there would have been no unreasonable search or seizure nor any compulsion of the taxpayer's giving evidence against himself."
 418 F.2d at 1214.
 
 
 [21]
 It speaks in terms of "interest" in the transaction:
 "2. Donald A. Pollack, the Intervenor, has an interest relating to the transaction which is the subject of this action and is so situated that the disposition of this action may, as a practical matter, impair or impede his ability to protect that interest unless the Intervenor's interest is adequately represented by existing parties, in that a judgment of this Court may adversely and prejudicially effect the substantial rights and privileges secured to him by the Constitution of the United States, as will more definitely appear from the Intervenor's proposed Answer, a copy of which is attached hereto."
 
 
 [22]
 See Paragraph 1 of the order (note 10,supra) which assumed that this was compelled under the "rationale of Reisman v. Caplin."
 
 
 [23]
 
 "Upon timely application anyone shall be permitted to intervene in an action: * * * (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."
 
 
 [24]
 Donaldson closes by posing only two requirements that the Government must meet to enforce the summons:
 "We hold that under § 7602 an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution."
 400 U.S. at 536, 91 S.Ct. at 545, 27 L.Ed.2d at 592.
 But earlier the Court had stated:
 "It is precisely the latter situation — where the sole object of the investigation is to gather data for criminal prosecution — which is the subject of the Reisman dictum * * * [and] when so read, the dictum comes into proper focus as applicable to the situation of a pending criminal charge or, at most, of an investigation solely for criminal purposes."
 400 U.S. at 533, 91 S.Ct. at 543, 27 L. Ed.2d at 590 (emphasis added).
 Along with this riddle we may have one of our own in determining whether emphasis on the continuance of a civil investigation and non-existence of "an inquiry with dominant criminal overtones" in the following key language of Roundtree, supra, can any longer be sustained:
 "We have already pointed out that if Roundtree is able to prove that the sole purpose of the summons is to build a criminal prosecution, the summons must fail. Roundtree's pleadings adequately preserved this defense. If the IRS sustains its contention that this is a civil investigation, the mere fact that evidence might be used against Roundtree in a later prosecution will not support a claim of self-incrimination. [Venn v. United States, 5 Cir.], 400 F.2d [207] at 210-212. If, however, Roundtree can show that the investigation has become `an inquiry with dominant criminal overtones', he is entitled to raise his fifth amendment objections. Stuart v. United States, 5 Cir. 1969, 416 F.2d 459."
 420 F.2d 852.
 
 
 [25]
 Except for names and dates the allegations in our record are identical with the following fromDonaldson as our Mercurio opinion reflects:
 "Petitioner John P. Grady, special agent, and Bruce B. Miller, special agent, New Orleans, Louisiana, are guilty of bad faith both with the court and the intervenor in asserting that they have been conducting an investigation to ascertain the correct income tax liability of Kevin L. Donaldson, for the calendar years 1964, 1965, 1966 and 1967.
 "John P. Grady is a special agent assigned to the intelligence division, Internal Revenue Service, Tampa Florida, and Bruce B. Miller is a special agent assigned to the Intelligence Division, Internal Revenue Service, New Orleans, Louisiana.
 "The function of the Intelligence Division is to enforce the criminal statutes applicable to tax laws by developing information concerning alleged criminal violations thereof.
 "Special Agent Bruce B. Miller was assigned the investigation of Kevin L. Donaldson for the calendar years 1964, 1965, 1966 and 1967 for the express and sole purpose of obtaining evidence concerning any violations of the criminal statutes applicable to the tax laws of the United States and special agent John P. Grady is assisting special agent Miller in this investigation."
 418 F.2d at 1215-1216.
 
 
 [26]
 Able counsel, Robert E. Meldman, Esq., for Taxpayer here was counsel for Donaldson both in the Fifth Circuit and in the Supreme Court
 
 
 [27]
 "Upon timely application anyone may be permitted to intervene in an action:
 when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."
 
 
 [28]
 United States v. Morton Salt Co., 1950, 338 U.S. 632, 642, 70 S.Ct. 357, 363, 94 L.Ed. 401, 411
 
 
 [29]
 We have pointed out similar considerations in rejectingMiranda requirements in IRS investigations:
 "We cannot agree that every administrative official who confronts a citizen with a request for information that might disclose criminal conduct, thereby exerts a compulsion on the citizen that must be dispelled by the Miranda placebo. In today's vast and complex network of widespread daily administrative contacts between citizens and government officials, such a holding would open a veritable Pandora's box. When a census taker returns to recheck information he has received or a building inspector comes to investigate a report of noncompliance with provisions of the city housing code or a game warden who hears shooting out-of-season stops a man he finds in the woods or a bank examiner questions a teller whose figures are out of balance, would each then have to give the Miranda warnings? In each case a governmental official is confronting a citizen and criminal charges may result. There are a thousand and one administrative inquiries routinely made every day in every city which could evoke responses that might form a part of the basis in proof for a charge of perjury, falsification of records, failure to file a report or perform a legal duty or other criminal conduct. Most of these routine administrative confrontations would be rendered ineffective to the citizen and his government by imposing Miranda requirements. Indeed, if the warning became too commonplace, the very purpose of its requirement could be undermined. If "authority" were allowed to supplant custody — the deprivation of freedom — as the determinant of compulsion, even these routine field investigations which Miranda expressly exempted must fall. Under such a rule a policeman upon stopping a motorist could not ask to see his license without warning him and advising him * * *."
 United States v. Prudden, 5 Cir., 1970, 424 F.2d 1021, 1028.