UNITED STATES of America and Nick DiFalco, Special Agent of the Internal Revenue Service, Petitioners,

v.

Robert G. SHIVLOCK, Vice President, First Denver Mortgage Co., Respondents,

and

Donald U. West, Intervenor.

UNITED STATES of America and Nick DiFalco, Special Agent of the Internal Revenue Service, Petitioners,

v.

INCOME REALTY AND MORTGAGE, INC. and William Riley, Respondents.

UNITED STATES of America and Nick DiFalco, Special Agent of the Internal Revenue Service, Petitioners,

v.

ARAPAHOE BANK AND TRUST and David F. Clark, Assistant Vice President, Respondents,

and

Donald U. West, Intervenor.

Civ. A. Nos. 78–W–903 to 78–W–905.

United States District Court, D. Colorado.

Nov. 16, 1978.

**1384**

Joseph F. Dolan, U. S. Atty., Donald M. Hoerl, Asst. U. S. Atty., Denver, Colo., for petitioners.

Roger P. Barrick, Boulder, Colo., for intervenor.

## MEMORANDUM OPINION

WINNER, Chief Judge.

These three consolidated cases are a part of the continuing saga of the headaches stemming from the enactment of the so-called third party record keepers statute, 26 U.S.C. § 7609. See, *United States v. Bank of Monte Vista,* (D.C.) 451 F.Supp. 945, and *United States v. Mackety* (unreported) No. 78–W–974, in this court. All three of the present cases have to do with the same taxpayer, Donald U. West, and in two of them, *United States v. Shivlock,* No. 78–W–

903, and *United States v. Arapahoe Bank and Trust,* 78–W–905, the IRS recognizes that the named respondents are third party record keepers as defined in 26 U.S.C. § 7609. That being so, notice of service of summons on those two respondents was given to Mr. West in accordance with the requirements of 26 U.S.C. § 7609(a), and he utilized the provisions of 26 U.S.C. § 7609(b) to stay compliance on the part of the named respondents with the command of the third party summons. In accordance with the procedure set up in *United States v. Bank of Monte Vista, supra,* the persons summoned notified the court that their refusal to produce the requested records rested totally upon the direction given to them by the taxpayer in accordance with the provisions of the statute. The statute says that once the notice is given, the third party record keeper can't produce the records, and at that instant the innocent third party becomes the target of a lawsuit. That's why we have developed the procedure spelled out in *United States v. Bank of Monte Vista,* and it has worked well.

In the third case, *United States v. Income Realty and Mortgage, Inc.* No. 78–W–904, the IRS says that the respondent is not a third party record keeper, and, additionally, it says that even if it is a third party record keeper for some purposes, the statute is inapplicable to the records sought. For that reason, the notice required by § 7609(a) was not given to Mr. West in conjunction with the summons served on Income Realty and Mortgage, and the IRS issued a summons directed to it under the provisions of 26 U.S.C. § 7602. Enforcement was sought under 26 U.S.C. § 7604, but § 7609 was deemed to be inapplicable.

Donald U. West asks to intervene in all three cases, and, in my judgment, he can intervene as a matter of right where it is agreed respondents are third party record keepers. 26 U.S.C. § 7609 says that "notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such

summons under § 7604." Rule 24(a) says that "upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene." § 7609 confers an unconditional right to intervene in cases where summons enforcement is sought against a third party record keeper who has refused compliance because of the taxpayer's notice served in accordance with § 7609(b)(2). Accordingly, taxpayer's motions to intervene in [1] 78–W–903 and 78–W–905 are granted as interventions of right.

*United States v. Income Realty and Mortgage,* 78–W–904, presents a separate problem. § 7609(a)(3) defines third party record keepers.[2] § 7609(a)(3)(D) says that "any broker (as defined in section 3(a)(4)) of the Securities Exchange Act of 1934" is a third party record keeper. The referenced section of the Securities Exchange Act of 1934 defines a broker as "any person engaged in the business of effecting transactions in securities for the account of others," and I glean from the record that the Colorado Securities Commission has said that Income Realty and Mortgage is subject to the Colorado Act because the company allegedly sells fractional interests in mortgages. Apparently, the S.E.C. has taken no position, and Income Realty and Mortgage vigorously disagrees with the Securities Division of the State of Colorado. Thus we have the IRS saying that Income Realty and Mortgage is not a broker, and we have Income Realty and Mortgage saying it isn't a broker, but Donald West wants to say that the company is a broker within the meaning of § 7609. If the company is a broker, West says that he can intervene as a matter of right under Rule 24(a), and he takes a secondary position that if Income Realty isn't a broker, he should be allowed discretionary intervention under Rule 24(b).

■ There is no evidence that Income Realty is a broker. There is a suggestion that the Colorado Department of Securities says that it is a broker, but I find that Income Realty and Mortgage has not been shown to be a broker within the meaning of 26 U.S.C. § 7609,[3] and, accordingly, I find that there is no right to intervene under Rule 24(a). I do not think permissive intervention is warranted. Rule 24(b) says that "in exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." The record demonstrates that such intervention would unduly delay the rights of the Internal Revenue Service because, although Congress has permitted intervention in cases involving third party record keepers [subject to limitations I shall discuss presently], Congress has not said that intervention should be allowed in every investigation conducted by the Internal Revenue Service, and tax collection would bog down if discretionary intervention were to be allowed just because the taxpayer wants to find out how hot the pursuit of the IRS is.

■ The Income Realty and Mortgage records the IRS wants to look at are its records concerning West's activities in working for it as a salesman. According to the testimony, the IRS wants to find out about commissions paid to him by Income Realty, and the record shows that West has made no investments with or through Income Realty. Thus, *Donaldson v. United States,* (1970) 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580, governs. There the applicant to intervene was a former employee, and the IRS wanted to examine the employer's records. The Supreme Court first noted that the employee under investigation had no proprietary interest in the records and that examination of them could violate no

---

1. As will be discussed later, this right to intervene is a rather hollow right under *United States v. LaSalle National Bank,* (1978) 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221.

2. *United States v. Mackety, supra,* dealt with problems arising under the statutory language making "any person extending credit through

the use of credit cards or similar devices" a third party record keeper.

3. There isn't enough evidence as to the nature of the company's business to permit any finding as to its being a broker *vel non.*

privilege possessed by him. The Court squarely held that there was no right of intervention under these circumstances which closely parallel those we here face. The Supreme Court did not discuss in any detail a Rule 24(b) intervention, but *United States v. Newman,* (1971) 5 Cir., 441 F.2d 165, does. The Fifth Circuit said that *"Donaldson*—upholding a denial of intervention—compels rejection of intervention on discretionary grounds." As the Supreme Court said in *Donaldson* in explaining the refusal to permit intervention, "Any other holding, of course, would thwart and defeat the appropriate investigatory powers that the Congress has placed in "the Secretary or his delegate." It matters not whether the intervention be of right or permissive, because, as the Fifth Circuit said in *Newman,* "It is the intervention in such situation, not the technical basis—as of right or permissive—for permitting it which thwarts and defeats." By enacting 26 U.S.C. § 7609, Congress limited the application of the *Donaldson* rule, but it did so only as to defined third party record keepers under the circumstances contemplated by the statute. I find nothing in § 7609 which modifies the full applicability of *Donaldson* where the information sought is information of a nature different from that contemplated by § 7609 or when it is possessed by someone not included in the third party record keeper definitions. As was said in *Newman,* "to permit (intervention under these circumstances) would unwarrantedly cast doubt upon and stultify the Service's every investigatory move." So, I say that permissive intervention should not be and it will not be allowed in this case.

█ As I have said, I think it clear that Investment Realty and Mortgage is not a third party record keeper under the statutory definitions of that term, and I do not think that West was entitled to notice of the summons served on Investment Realty and Mortgage. Nevertheless assuming arguendo that the company is a "broker" within the meaning of § 7609, I still say that West was entitled to no notice because § 7609 would not be applicable to this particular summons. In so ruling, I candidly

admit that I crib from the research done by Judge Murray as reported in *United States v. Exxon,* (1978) D.C.Md., 450 F.Supp. 472, and I agree with his thorough well reasoned opinion. There was not the slightest doubt that Exxon was within the third party record keeper definition as being a "person extending credit through the use of credit cards." However, the IRS summons wanted to know nothing about any credit card business done by the taxpayer with Exxon, but, instead, inquiry was being made as to rentals paid under a lease between Exxon and the taxpayer. Judge Murray ruled, and I agree with him, that the statute wasn't applicable when the records sought from Exxon were unrelated to its credit card business. He held, and I agree, that the taxpayer was entitled to no notice of the summons; that the taxpayer wasn't in a position to stay enforcement and that there could be no intervention—either permissive or as of right.

I think that the statutory history shows that the underlying concern of Congress in enacting § 7609 was worry about unnecessary infringements on rights of privacy. There was widespread criticism of *Donaldson v. United States, supra, California Bankers Association v. Shultz,* 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812, and related cases which gave the IRS almost unbridled access to records an ordinary person had a right to think were private. H.R.Rep.No. 94–658, 94th Cong. 2nd Sess. 307, U.S.Code Cong. & Admin.News 1976, pp. 2897, 3203, says:

"The use of the administrative summons, including the third party summons, is a necessary tool for the IRS in conducting many legitimate investigations concerning the proper determination of tax. The administration of the tax laws requires that the Service be entitled to obtain records, etc. without an advance showing of probable cause or other standards which usually are involved in the issuance of a search warrant. On the other hand, the use of this important investigative tool should not unreasonably infringe on the civil rights of taxpayers, including the right to privacy."

The statutory history demonstrates that § 7609 was aimed at protection from unreasonable prying of records of a taxpayer's own personal or business transactions, and I think it clear that there was no intent of Congress to protect all third party records just because some of them not subject to the inquiry related to another person's investments or personal credit transactions. Not only does the statutory history so demonstrate, but on the face of the statute such is its aim. Those included are financial institutions handling a person's bank accounts, credit agencies keeping records of a person's personal business, credit card transactions showing a person's use of personal credit, brokers having records of personal investments, and attorney's and accountants knowing the inner workings of one's financial life. This is what Senate Report 94–938 said about the statute:

".   .   . a third party record keeper is generally to be a person engaged in making or keeping the records involving the transactions of other persons."

The House agreed in its Conference Report:

".   .   . the agreement clarifies the definition of a third party record keeper, limiting this category to attorneys, accountants, banks, trust companies, credit unions, savings and loan institutions, credit reporting agencies, issuers of credit cards, and brokers in stock or other securities."

It just wouldn't make sense to say that employees of a company which uses credit cards or employees of a broker are immune from a tax investigation as to their earnings as employees when it would be open sesame if the employee worked for someone else. As Judge Murray said in *Exxon*:

"Although Exxon does make and keep the records of the transactions of other persons in carrying out its functions as an issuer of credit cards, the records at issue here more properly involve Exxon's own transactions and would not be subject to the notice rule. For the court to hold otherwise would necessitate a determination on the part of this court that the fact that a person or company issues credit cards to some persons automatically places all records of any transactions of any nature of that person or company within the notice requirements of Section 7609. This would place a burden on IRS investigators which would far exceed the intent of the Congress as expressed in the legislative history of the amendment to Section 7609. In the absence of evidence of an express purpose on the part of Congress to place such a burden on the IRS, this court is not inclined to read Section 7609 so broadly as to find a notice requirement in the issuance of the present summons. Accordingly, the court finds that no notice to movants was required by the IRS when it issued the summons to Exxon."

■ Assuming Investment Realty and Mortgage is a broker and that it is a third party record keeper insofar as its records reflect investments made by members of the public through it, nevertheless, its records as to commissions paid to one of its salesmen are not subject to the notice or intervention provisions of 26 U.S.C. § 7609, and I find no statutory right on the part of Mr. West to intervene in this case nor do I think that the exercise of an informed discretion suggests that permissive intervention should be allowed.

■ This disposes of the problems peculiar to *United States v. Income Realty and Mortgage,* 78–W–904, and it brings me to the question common to all three of the cases; namely, the demand that the summons be quashed because of its alleged misuse. In all of the cases, West says that the IRS is guilty of conducting this investigation contrary to the narrow limitations of *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221. Summons abuse was claimed in *United States v. Exxon, supra,* but that case was decided 60 days before the opinion in *LaSalle National Bank* was announced. Judge Murray decided *Exxon* relying on *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580, and the correctness of his decision is emphasized by *La-*

**1388**

*Salle.* The District Judge who decided *La-Salle* held that the summons in that case was used "solely for the purpose of obtaining evidence for use in a criminal prosecution." I make no such finding in any of the three cases before me; and, to the contrary, I find that the summons were issued for the legitimate purpose of aiding in collection of taxes which may be due, and that any chance of criminal prosecution of Mr. West is incidental and collateral to the present principal purpose of the investigation. This is not to say that he may not be prosecuted someday, but it is apparent from the testimony in the case that the investigation is just getting off the ground and that there has been no referral of the case for prosecution nor has there been any decision to refer it. Where in *LaSalle* the summons was solely for the purpose of furthering a criminal prosecution, the facts in this case show that criminal prosecution is no more than a possible offshoot of the tax investigation presently being conducted. The fact that the Intelligence Service is participating in the investigation shows that fraud charges are being considered, but it may be no more than civil fraud; and, indeed, even if the investigating agents and their supervisors someday think there should be a criminal prosecution, they can be overruled. The underlying showing present in *LaSalle* is missing here, but nevertheless counsel for Mr. West says that he can block the investigation under the holding in *LaSalle.* Justice Blackmun there said:

> "Prior to a recommendation for prosecution to the Department of Justice, the IRS must use its summons authority in good faith. *Donaldson v. United States,* 400 U.S., at 536 [91 S.Ct. at 545, 27 L.Ed.2d 580]; *United States v. Powell,* 379 U.S. 48, 57–58 [85 S.Ct. 248, 254, 255, 13 L.Ed.2d 112] (1964). In *Powell,* the Court announced several elements of a good-faith exercise:
>
> > '[The Service] must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not al-

> ready within the Commissioner's possession, and that the administrative steps required by the Code have been followed . . . . [A] court may not permit its process to be abused. Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation' (footnote omitted). *Ibid.*

"A number of the Court of Appeals, including the Seventh Circuit in this case, [*United States v. LaSalle National Bank*] 554 F.2d 302 at 309, have said that another improper purpose, which the Service may not pursue in good faith with a summons, is to gather evidence solely for a criminal investigation. The courts have based their conclusions in part on *Donaldson's* explanation of the *Reisman* dictum. [*Reisman v. Caplin,* 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459] The language of *Donaldson,* however, must be read in the light of the recognition of the interrelated criminal/civil nature of a tax fraud inquiry. For a fraud investigation to be solely criminal in nature would require an extraordinary departure from the normally inseparable goals of examining whether the basis exists for criminal charges and for the assessment of civil penalties.

"In this case, respondents submit that such a departure did indeed occur because Special Agent Olivero was interested only in gathering evidence for a criminal prosecution. We disagree. The institutional responsibility of the Service to calculate and to collect civil fraud penalties and fraudulently reported or unreported taxes is not necessarily overturned by a single agent who attempts to build a criminal case.

.  .  .  .  .

"As in *Donaldson,* then, where we refused to draw the line between permissible civil

and impermissible criminal purposes at the entrance of the special agent into the investigation, 400 U.S., at 536 [91 S.Ct., 534, 27 L.Ed.2d 580], we cannot draw it on the basis of the agent's personal intent. To do so would unnecessarily frustrate the enforcement of the tax laws by restricting the use of the summons according to the motivation of a single agent without regard to the enforcement policy of the Service as an institution. Furthermore, the inquiry into the criminal enforcement objectives of the agent would delay summons enforcement proceedings while parties clash over, and judges grapple with, the thought processes of each investigator. *See United States v. Morgan Guaranty Trust Co.,* (1978) 2 Cir., 572 F.2d 36. This obviously is undesirable and unrewarding. As a result, the question whether an investigation has solely criminal purposes must be answered only by an examination of the institutional posture of the IRS. Contrary to the assertion of respondents, this means that those opposing enforcement of a summons do bear the burden to disprove the actual existence of a valid civil tax determination or collection purpose by the Service. After all, the purpose of the good-faith inquiry is to determine whether the agency is honestly pursuing the goals of § 7602 by issuing the summons.

"Without doubt, this burden is a heavy one. Because criminal and civil fraud liabilities are coterminous, the Service rarely will be found to have acted in bad faith by pursuing the former. On the other hand, we cannot abandon this aspect of the good-faith inquiry altogether. We shall not countenance delay in submitting a recommendation to the Justice Department when there is an institutional commitment to make the referral and the Service merely would like to gather additional evidence for the prosecution. Such a delay would be tantamount to the use of the summons authority after the recommendation and would permit the Government to expand its criminal discovery rights. Similarly, the good-faith standard will not permit the IRS to become an information gathering agency for other departments, including the Department of Justice, regardless of the status of criminal cases.

"In summary, then, several requirements emerge for the enforcement of an internal revenue summons. First, the summons must be issued before the Service recommends to the Department of Justice that a criminal prosecution, which reasonably would relate to the subject matter of the summons, be undertaken. Second, the Service at all times must use the summons authority in good-faith pursuit of the congressionally authorized purposes of § 7602. This second prerequisite requires the Service to meet the *Powell* standards of good faith. It also requires that the Service not abandon in an institutional sense, as explained in Parts III–A and III–C above, the pursuit of civil tax determination or collection."

■ Mr. West, the only person opposing enforcement, does "bear the burden to disprove the existence of a valid civil tax determination or collection purpose by the Service", and he has failed to establish that such is not a purpose. Counsel places great stress on footnote 19 in *LaSalle* which reads:

"To the limited extent that the institutional good faith of the Service with regard to criminal purpose may be questioned before any recommendation to the Department of Justice, our position on this issue necessarily rejects the Government's argument that prerecommendation enforcement of summonses must meet only the *Powell* elements of good faith. We have concluded that the Government's contention fails to recognize the essence of the good-faith inquiry. The *Powell* elements were not intended as an exclusive statement about the meaning of good faith. They were examples of agency action not in good-faith

pursuit of the congressionally authorized purposes of § 7602. The dispositive question in each case, then, is whether the Service is pursuing the authorized purposes in good faith."

I don't find all that much taxpayer solace in the Court's language in footnote 19. Of course, the ultimate question must be whether the Service is in good faith trying to collect taxes which may be due albeit a criminal prosecution may follow, and the requirements of *Powell* must be met. [I am unconvinced that *LaSalle* doesn't narrow *Powell* rather than broaden it, because *LaSalle* speaks in terms of overall bad motive on the part of the agency rather than the agent. *LaSalle* places almost total reliance on the checks and balances within the IRS and it limits a court's inquiry to institutional bad faith—a burden of proof which I suspect is probably more nearly "impossible" rather than just "a heavy one."]

Taxpayer here wants to build into institutional bad faith an interview an agent had with his adult daughter and his divorced wife. There was no showing of impropriety on the part of the interviewing agent, but, even if there were, this would be a far cry from institutional bad faith in the sense in which the Court spoke in *LaSalle*. In dissent, Justice Stewart said that we may be facing endless discovery hearings with the "bright line test" of *Donaldson* now in limbo, but on showings as scanty as that made by West in this case, the rulings aren't going to be difficult to make. Under the tests of *Powell* which still have vitality, the record shows that the investigation is being conducted for the very legitimate purpose of trying to ascertain the tax liability, if any, of Donald U. West. There is no showing that the desired information is already in the Commissioner's possession [and I don't think that this requirement blocks off getting two witnesses to the same fact even if there had been a showing of some information in the possession of the Service]; there is no suggestion that the administrative steps required by law have not been

adhered to; there is no showing of harassment of a taxpayer as that word is used in *Powell*, although I concede that no one likes to have his taxes looked into; there is no showing of any collateral dispute, let alone a showing of pressure on the taxpayer to settle one, and, finally, there is no evidence at all of any purpose on the part of the individual agent, his supervisor or the Service adversely reflecting in any way on the good faith of the investigation.

At time of oral argument, there was some mention of granting a stay of any order requiring the production of the documents by the three respondents [none of whom have any objection to the production and none of whom want the stay.] These are cases in which appellate court rulings would be helpful, and I am concerned as to whether refusal of a stay would possibly moot them out should an appeal be taken after the records had been examined. At the same time, I am worried about staying a tax investigation if the Internal Revenue Service vehemently objects. I am not unaware of the protections afforded the Service by 26 U.S.C. § 7609(e) which says that anyone staying a record examination by utilization of 26 U.S.C. § 7609(b) causes a suspension of both the civil and criminal statutes of limitation "for the period during which a proceeding and appeals therein, with respect to the enforcement of such summons is pending."

Whether this suspension of the running of the statutes of limitation affords the Service sufficient protection, I know not, but, to afford opportunity for hearing on a long stay, I direct the entry of judgment as follows:

1. The motion of Donald U. West to intervene in *United States v. Shivlock*, No. 78–W–903 and in *United States v. Arapahoe Bank and Trust*, No. 78–W–905 is granted.

2. The motion of Donald U. West to intervene in *United States v. Income Realty and Mortgage, Inc.*, No. 78–W–904 is denied.

3. The respondents in all three of the cases shall comply with the requirements of the summons served upon them, and they shall make available for inspection by an authorized agent of the Internal Revenue Service those records. The inspection shall be conducted at a time and place to be agreed upon by petitioners and respondents, and, if they are unable to agree, the court will fix a time and place for the inspection.

4. The effective date of this judgment shall be stayed for ten days after its date.