**UNITED STATES of America and Edward P. Cory, Revenue Agent, Internal Revenue Service, Petitioners-Appellees,**

v.

**SUN FIRST NATIONAL BANK OF ORLANDO and Clifford M. Hames, Respondents-Appellants.**

No. 74–1453.

United States Court of Appeals, Fifth Circuit.

April 4, 1975.

Rehearing and Rehearing En Banc Denied May 16, 1975.

J. Thomas Cardwell, Orlando, Fla., for respondents-appellants.

John L. Briggs, U. S. Atty., Harrison T. Slaughter, Jr., Asst. U. S. Atty., Orlando, Fla., Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Chief, Appellate Sec., Dennis M. Donohue, John P. Burke, William A. Whitledge, Attys., Tax Div., Dept. of Justice, Washington, D. C., for petitioners-appellees.

Before BELL, AINSWORTH and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Sun First National Bank of Orlando and Clifford M. Hames, its Vice-President and Trust Officer, appeal from the district court's enforcement of a Section 7602 administrative summons of the Internal Revenue Service issued by Revenue Agent Edward P. Cory. We affirm.

The summons was issued in the matter of the tax liability of thirty-two named trusts handled by the bank's trust department and sought production of the following:

"As to each of the Trusts set forth on the attached list for which the bank

has fiduciary responsibilities, the retained copy of Form 1041 (Fiduciary Income Tax Return) filed by the bank as trustee for the years 1970 and 1971; the trust declaration or instrument establishing or creating the trust; all records of income and disbursements of each trust; records in connection with the investment of trust funds; records of assets contributed to the trust; your Trust Committee minutes relevant to each trust; and the Employer Identification Number of each of the trusts."

The two questions raised by Sun on appeal from the judgment enforcing this summons are: *first*, whether an IRS summons seeking production of a random sample of records of a bank's trust accounts is authorized under 26 U.S.C.A. § 7602 and *second*, whether an IRS summons seeking production of a random sample of records of a bank's trust accounts violates the Fourth Amendment. We limit our consideration of this case to these two attacks on the summons. The attacks fail because the facts as they appear in the record do not support the basic premise of arbitrariness implicit in the questions posed. Our affirmance of the enforcement, therefore, does not squarely confront the import of the questions.

Respondents' opposition to the summons is based on the factual situation in which it was issued. Early in 1973 the IRS undertook an audit of the consolidated income tax return for the First at Orlando Corporation, a bank holding company controlling thirty-seven banks with assets of over 1.7 billion dollars. As a part of this larger audit Revenue Agent Edward P. Cory directed the audit of Sun First National Bank of Orlando, the lead bank of the holding company. Sun was very cooperative, providing free access to the IRS for most of its records, including those records of its Trust Department which Sun considered relevant to the IRS review of First at Orlando's tax liability. The information provided which related to the Trust Department included data on its common

trust fund, the minutes of the Trust Committee meetings, the tax identification numbers of certain accounts, records of the amount of income and expenses received by and incurred by Sun in managing the common trust fund, and other requested materials. It was only when Cory requested information concerning certain individual trusts that Sun balked at the IRS request.

Cory and his supervisor, prior to the beginning of the examination of Sun's records, had determined that in the Trust Department phase of the audit the IRS would examine the common trust fund and audit the interest equalization taxes reported by Sun, as fiduciary, in respect to the various trusts it managed. *See* Int.Rev.Code of 1954, §§ 4911–4920. From the information which the bank freely provided, Cory extracted the names of approximately 150 individual trusts. He then selected a random sample of these trusts for closer examination to evaluate Sun's performance of its duties to the IRS with respect to these trusts. The bank was requested to furnish Cory the bank's retained copy of the Form 1041 Fiduciary Income Tax Return of each of the thirty-two accounts. Sun offered, through its trust officer, Clifford M. Hames, to provide copies of the requested returns with the top portions, containing the names of the trusts, blanked out. This offer made Cory suspicious as to the accuracy of the fiduciary returns, and he decided, with the concurrence of his supervisor, to examine more closely these trusts and the data which the bank had to support its information returns. Accordingly, Cory served Hames with an IRS summons on May 14, 1973. The summons directed Hames to appear before Cory on May 29, 1973, to testify regarding the thirty-two trusts, and to bring with him, as to each trust for which Sun had fiduciary responsibilities the documents and records set forth.

After consulting with its legal counsel, Sun refused to obey the summons, asserting that the requested materials were not relevant to the ongoing audit of First at Orlando's consolidated return.

Sun felt that its fiduciary relationship with the trusts impelled it to protect them and their beneficiaries from what it considered a "fishing expedition" by the IRS. After the case was reviewed by the Department of Justice at the request of the IRS, the United States sought enforcement of the summons in federal district court. *See* Int.Rev.Code of 1954, § 7402(b).

The district court held a hearing on the motion for enforcement, at which only Agent Cory testified. The court found that there was underway a good faith audit of the tax liability of the trusts sufficient to justify enforcement of the summons, which sought information relevant to that investigation.

■ Our review requires us to accept the facts found by the district court unless clearly erroneous, under F.R.Civ.P. 52(a), and to review the court's compliance with the mandates of United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964) and United States v. Bisceglia, 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975). Once a summons is challenged it must be scrutinized by a court to determine whether it seeks information relevant to a legitimate investigatory purpose and is issued in good faith. This is the precise scrutiny that was afforded by the district court. Agent Cory testified that:

> "The purpose of this specific summons is to secure information to determine that all appropriate tax returns were filed by these 32 trusts to determine also that the tax liability on these trusts had been properly computed and to secure information pertaining to the assets, so if there is any tax liability, unpaid tax liability, we would be able to secure payment."

Upon further examination of the witness, an exchange over the Government's objection to the scope of cross-examination brought the following comment from the respondents' attorney:

> "MR. CARDWELL: Your Honor, this is one of the points of great confusion to me as to whether in fact this whole thing started out, whether they are auditing the bank for purposes of determining whether there is any income tax liability on the part of the bank or whether, in fact, the government is seeking pursuant to some independent investigation of some other question in the context of this audit, get hold of these fiduciary records in the bank. As the Court may recall from my memorandum, I raised that question. That, of course, is the purpose of the last question of Mr. Cory to try to shed some light on that."

Thereupon the court overruled the objection stating that "I think the Court has the obligation to find out all the facts." To this end the Court recalled the witness and had this exchange:

> "THE COURT: In connection with these 32 trust accounts, is there anything else being done by the Internal Revenue Service to audit any of these accounts other than your seeking to get these documents?
>
> "THE WITNESS: To my knowledge there is no other assignment except to me. Now, I have been assigned the responsibility of examining these entities for income tax and other liabilities. They have assigned it to me, Sir.
>
> "THE COURT: Are you investigating the individual tax returns of any of the beneficiaries of these trusts?
>
> "THE WITNESS: At this time, no, Sir.
>
> "THE COURT: None has been authorized?
>
> "THE WITNESS: Not at this time, Sir.
>
> "THE COURT: Well, if a person is a beneficiary of a trust and gets income from a trust in order to be able to fully ascertain if such person owed any income tax to the government, wouldn't the government have to take into consideration the person's income outside of the trust, the income as well as that that might be received from the trust?

"THE WITNESS: Yes, but in this aspect we are examining the income tax liability of the trust and we are also examining any information returns that the trust might be required to file showing the taxable portions to the beneficiaries. To this extent we would not need to see the beneficiaries' tax return or contact them. We would be there verifying that the records of the trust agree with the information returns and the returns filed with us.

"THE COURT: You are seeking just to audit what, if any, income tax is owed by the trust itself as distinguished from the beneficiary?

"THE WITNESS: At this time, yes, Sir."

The respondents made no attempt to narrow the scope of the summons as it applied to the trusts, offered no witnesses or other evidence bearing on the Government's purpose, offering only a broad attack against the entire summons. Whereupon the court correctly stated its responsibility and made its findings of fact, as follows:

"I believe all the government has to show is that there is a good faith audit under way as to the documents, which is under way as to the tax entity concerning which the documents are sought and that the documents sought must be —— —— the information must be relevant and material or likely to be relevant and material. The good faith of the audit of these individuals accounts is subject to some suspect in view of the way in which it arose and it portends some apprehension as to such tactics, where they are resorted to because of an apparent dissatisfaction with the party seeking to stand on his rights, but apparently, as *this case reaches this Court, there is sufficient audit under way as to each of these accounts which would permit these records and documents, the information to be secured* because not only is there the testimony of the agent but the government has represented that this matter has been reviewed by the Treasury and the Department of Justice which carries with it to me evidence that there has been more than one agent's desire to secure this information, but I again say that audits ought to be instigated for more reason that dissatisfaction with the fact that a person or entity has required the government to seek from its own records documents which it has or should have.

"So, I will require the enforcement of the summons of those comments." (emphasis added).

■ We find no error. Based on the district court's finding that there was a good faith audit of the trusts underway and that the documents sought were relevant to that investigation, we affirm. We express no view on whether the documents would have been properly subject to summons if the only ongoing investigation was of Sun. *Compare* United States v. Humble Oil & Refining Co., 488 F.2d 953 (5th Cir. 1974), cert. applied for 43 U.S.L.W. 3079 (U.S. June 4, 1974) (No. 73–1827), *with* United States v. Carter, 489 F.2d 413, reh. denied, 504 F.2d 428 (5th Cir. 1974); *see* United States v. Bisceglia, 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975).

■ This Court has consistently upheld otherwise valid Internal Revenue summonses against Fourth Amendment challenge. United States v. Roundtree, 420 F.2d 845 (5th Cir. 1969).

Affirmed.