**UNITED STATES of America and Lawrence Plave, Special Agent of the Internal Revenue Service, Plaintiffs-Appellees,**

**v.**

**John W. GREENLEAF, Jr., Defendant-Appellant,**

**John J. Santell, Jr., et al., Movants-Appellants.**

**No. 75–2194.**

United States Court of Appeals, Fifth Circuit.

Jan. 28, 1977.

---

Richard B. Wallace, Miami, Fla., Richard
J. Trattner, Mark D. Pastor, Beverly Hills,
Cal., for John J. Santell et al.

Robert J. Paterno, Miami, Fla., for John W. Greenleaf, Jr.

Robert W. Rust, U. S. Atty., Miami, Fla., Scott P. Crampton, Asst. Atty. Gen., Tax Div., U. S. Dept. of Justice, Gilbert E. Andrews, Acting Chief, Appellate Section, Meyer Rothwacks, George G. Wolf, Dept. of Justice, Washington, D. C., for plaintiffs-appellees.

Before MORGAN and GEE, Circuit Judges, and HUNTER,* District Judge.

GEE, Circuit Judge:

Greenleaf, et al., appeal the order of the Florida federal district court enforcing an Internal Revenue Service summons that required Greenleaf, as custodian of the partnership records of Greenleaf/Telesca, to turn over partnership records, and denying motions to intervene by appellants Telesca and Santell. Appellants argue (1) that the summons violates the fourth amendment rights of the co-partners; (2) that the fifth amendment privilege against self-incrimination applies to protect against disclosure of the partnership records; (3) that the summons is overbroad and seeks irrelevant and immaterial items; and (4) that Santell and Telesca were entitled to intervene in the proceedings below to protect their personal ownership and contractual interests in the summoned records and writings.

The IRS is investigating the tax years 1969–72 of taxpayer John Santell, a former partner (1967–70) in the Florida architectural and engineering partnership of Greenleaf/Telesca. The IRS issued a summons to Greenleaf as custodian of the partnership records to produce material related to its investigation of Santell.[1]

When Greenleaf refused to produce the records, the IRS brought an action to enforce the summons by petitioning the district court under 26 U.S.C. §§ 7402(b)[2] and 7604(a)[3] on behalf of the United States and IRS Special Agent Lawrence Plave. The petition named Greenleaf as respondent and prayed for an order requiring Greenleaf to comply with the summons. Greenleaf answered, and appellants Santell and Telesca filed motions to intervene. After a hearing at which Plave and Greenleaf testified, the district court granted the enforcement order with minor modifications.[4] Greenleaf, et al., bring this appeal.

In urging his fourth amendment claim, Greenleaf argues on behalf of Greenleaf/Telesca that the partnership possesses a right of shared privacy or a legitimate expectation of privacy that, under the

---

* Senior District Judge for the Western District of Louisiana, sitting by designation.

1. The IRS sought (1) all cancelled checks of the partnership for the years 1969–72; (2) the partnership cash receipts book covering the years 1969–72; (3) the partnership cash disbursements book covering the years 1969–72; (4) all retained copies of partnership returns for the years 1969–72; (5) any and all partnership records pertaining to expenses of and reimbursements to Santell for the years 1969–72; and (6) correspondence with Santell during the years 1969–72.

2. 26 U.S.C. § 7402(b)(1970):
 (b) To enforce summons.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.

3. 26 U.S.C. § 7604(a)(1970):
 (a) Jurisdiction of district court.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.

4. Item number four requested by Agent Plave was dropped when Agent Plave revealed he had the partnership returns and did not need them from Greenleaf. The district court also came to the conclusion, unchallenged here, that the United States had made an insufficient showing of relevance with respect to the production of the records of 1972 and declined to enforce the summons as to that year.

fourth amendment, entirely insulates it from the IRS summons. *See In re Subpoena Duces Tecum,* 81 F.Supp. 418, 420–21 (N.D.Cal.1948). Accepting such a view would be according partnerships broader fourth amendment rights than are possessed by individuals. In *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), the Supreme Court held that an individual taxpayer's right to privacy will not defeat an IRS summons if (1) the summons is issued for a proper purpose; (2) the inquiry is relevant to the purpose; (3) the Commissioner does not already possess the information; and (4) the requisite administrative steps are followed. *United States v. Powell, supra* at 58, 85 S.Ct. 248. *See United States v. Rountree,* 420 F.2d 845, 849 (5th Cir. 1969). *See also United States v. Sun First National Bank,* 510 F.2d 1107, 1160 (5th Cir. 1975). If the *Powell* formula satisfies the requirements of the fourth amendment for an individual, then aged,

questionable [5] and distinguishable [6] holdings of a district court under the fourth amendment will not avail against the combined effect of *Powell* and the self-evident maxim that a stream cannot rise above its source, the partner's individual rights.

■■■ Even a summons issued in compliance with the fourth amendment cannot, however, force Greenleaf to produce the matter if he has a valid fifth amendment claim, i. e., if the summons compels Greenleaf to incriminate himself.[7] Nevertheless, Greenleaf's attempt to protect, by means of the fifth amendment, the partnership's papers in his possession fails in light of *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974), in which the Supreme Court held, consistent with the principle that collective entities have no fifth amendment rights, see *United States v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944), that where a partnership has "an estab-

**5.** The principles employed by the district court in *In re Subpoena Duces Tecum* to bar absolutely discovery of a partnership's papers fit more appropriately under the fifth amendment. *See Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39, 50 & n. 7 (1976); *Bellis v. United States,* 417 U.S. 85, 95, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974).

**6.** The subpoena duces tecum involved in *In re Subpoena Duces Tecum* was pursuant to a grand jury investigation into antitrust matters. No attempt was made to make a showing of probable cause akin to that now required to enforce IRS summonses.

**7.** Recent Supreme Court cases require a serious examination of the nature of the documents and the means of their production to see if Greenleaf ever raises a fifth amendment claim. In *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), the Supreme Court held that an individual could not suppress, on fifth amendment grounds, private papers seized by government officials under a validly issued search warrant. The independent seizure of the records did not compel Andresen to testify against himself. In contrast to *Andresen,* the IRS summons would compel Greenleaf to produce documents in his possession. In *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the Supreme Court denied taxpayer's assertion of the fifth amendment to bar production by his attorney of accountant's papers delivered to him by the taxpayer because the papers were not privileged even in the taxpayer's hands.

*Fisher* established that the fifth amendment "applies only when the accused is compelled to make a *testimonial* communication that is incriminating," 425 U.S. at 408, 96 S.Ct. at 1579, 48 L.Ed.2d at 54 (emphasis added), reducing the scope of the privilege with respect to documents. Thus, even when Greenleaf is compelled to produce documents, "unless the Government has compelled the subpoenaed person to write the document . . ., the fact that it was written by him is not controlling with respect to the Fifth Amendment issue." 425 U.S. at 410, 96 S.Ct. at 1580, 48 L.Ed.2d at 55 n. 11. *Fisher* recognized, however, that the act of producing the documents requested has communicative significance in that the taxpayer's production admits the existence of the papers demanded and their possession or control by taxpayer. The taxpayer's production may also authenticate the documents. *See* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d at 56–57. In our case, as in *Fisher,* "It is doubtful that implicitly admitting the existence and possession of the papers rises to the level of testimony within the protection of the Fifth Amendment" because the existence and possession of partnership records are a "foregone conclusion." 425 U.S. at 411, 96 S.Ct. at 1580, 48 L.Ed.2d at 56. Nevertheless, in our case, unlike *Fisher* in which the taxpayer's production could not authenticate his accountant's papers, Greenleaf is in a position to authenticate the documents, and his production would probably do so. Thus, neither *Andresen* nor *Fisher* entirely forecloses Greenleaf's fifth amendment claim.

lished institutional identity independent of its individual partners," 417 U.S. at 95, 94 S.Ct. at 2187, and the custodial partner "is holding the subpoenaed partnership records in a representative capacity," 417 U.S. at 97, 94 S.Ct. at 2187, the privilege against self-incrimination is no bar to the compelled production. In so holding, the Court recognized that the personal privilege of the custodian of the records (because artificial organizations have no fifth amendment privileges) should not bar production of the financial records of the organization if it is an independent entity such that "the records demanded are the records of the organization rather than those of the individual." 417 U.S. at 92–93, 94 S.Ct. at 2185. The facts in this case establish that the Greenleaf/Telesca partnership is an organized entity apart from its members.

■ Greenleaf/Telesca was formed in 1964 and has engaged in the general practice of architecture and engineering under that name since then. Originally, the partners were John W. Greenleaf, Jr., B. A. McAdams and Francis E. Telesca. In 1967, John J. Santell, Jr. joined the firm as a partner, and in 1969, McAdams withdrew from the partnership. On December 31, 1970, Santell's withdrawal from the partnership became effective. Subsequent to 1970, Greenleaf and Telesca have continued as partners under the firm name Greenleaf/Telesca. Greenleaf/Telesca occupies three floors of an office building and employs 40–60 persons. It has a bank account in the firm name, owns real property in the firm name, uses stationery with the firm name in the letterhead. Greenleaf describes the partnership as "a $2,000,000-a-year business." These facts, coupled with the firm's written partnership agreement imposing a certain organizational structure on the firm, establishes that:

> This was not an informal association or a temporary arrangement for the undertaking of a few projects of short-lived duration. Rather, the partnership represented a formal institutional arrangement organized for the continuing conduct of the firm's . . . practice.

*Bellis v. United States,* 417 U.S. 85, 95, 94 S.Ct. 2179, 2187, 40 L.Ed.2d 678 (1974). Further, because Florida law both at the time in question and now grants partners a right of access to partnership records,[8] Greenleaf "lacks the control over their content and location and the right to keep them from the view of others which would be characteristic of a claim of privacy and confidentiality." 417 U.S. at 92, 94 S.Ct. at 2185. Because Greenleaf does not (and cannot) claim that the partnership records are his individual property, not subject to the access of others, *Bellis* controls.[9] *See also Fisher v. United States,* 425 U.S. 391, 408, 96 S.Ct. 1569, 1579, 48 L.Ed.2d 39, 54 (1976) ("neither a partnership nor the individual

8. Prior to Florida's passage of the Uniform Partnership Act in 1972, Florida courts had held that partners have a right to an accounting from their co-partners, *see Boyd v. Walker,* 251 So.2d 332, 334 (Fla.Dist.Ct.App.1971), and could enforce this right, once established, by discovery of partnership records. *Cf. David v. Tansill,* 297 So.2d 84 (Fla.Dist.Ct.App.1974). Florida's version of the Uniform Partnership Act explicitly grants partners a right of access to partnership records. Fla.Stat. § 620.65 (1973).

9. Greenleaf asserts that *Bellis* was decided under Pennsylvania law of partnership reflected in its version of the Uniform Partnership Act. Because Florida had no Uniform Partnership Act at the time for which the government seeks discovery, appellant claims *Bellis* is inapplicable. We note with interest that at the time of the district court's order in this case Florida had passed the Uniform Partnership Act, *see* Fla.Stat. §§ 620.56–.77 (1973), raising the question of whether we should judge the entity's status under *Bellis* by the law in existence at the time discovery was sought or the law in existence when the district court made its ruling. We need not decide this nice question, however, since we read *Bellis* to depend not upon the state's passage of the Uniform Partnership Act but upon all considerations, legal and factual, establishing the partnership as an entity independent of its partners or not. Greenleaf also asserts that the resistance of all partners distinguishes *Bellis* because in *Bellis* the partners wanted to comply with the IRS summons. The resistance of all the members of Greenleaf/Telesca to the summons no more alters the result than resistance by all shareholders of a corporation would successfully invoke the fifth amendment. *Cf. United States v. Beattie,* 522 F.2d 267, 276 (2d Cir. 1975).

partners are shielded from compelled production of partnership records on self-incrimination grounds").

Greenleaf also seeks the shelter of the "small family partnership" and "other pre-existing relationships of confidentiality" exceptions to the *Bellis* rule. 417 U.S. at 101, 94 S.Ct. at 2189. Greenleaf/Telesca does not qualify as the type of small family partnership protected in *United States v. Slutsky,* 352 F.Supp. 1105 (S.D.N.Y.1972), the case cited by the Supreme Court as an example of this exception. In *Slutsky,* two brothers formed a partnership and ran a country club with a significant number of employees and a large payroll. The partners were intimately involved with the operation of the business, so much so that the district court was convinced that the partnership records were the purely private and personal records of the partner-brothers. The district court did not see the partnership as an impersonal entity independent of the partners. In contrast, Greenleaf/Telesca is not a family partnership; none of the partners are related. Further, its membership has changed twice without affecting the business entity. Although Greenleaf states that he is primarily responsible for the engineering services and Telesca is primarily responsible for the architectural services, the partnership employs other engineers and architects who also contribute substantially to the output of the firm. Despite Greenleaf's close management of the finances of the company, the contributions of other professionals to the output of the firm suggests an effort and a continuity exceeding that of a personal partnership built largely upon the efforts of the two partners.

Nor had the partners in Greenleaf/Telesca any pre-existing relationships of confidentiality that might protect against a summons. The partnership agreement requiring confidentiality does not create the type of confidentiality referred to in *Bellis*—i. e., a confidentiality that traditionally creates a testimonial privilege, such as the confidentiality created by the attorney/client relationship. *See Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39, 51 (1976). Because *Bellis* controls and Greenleaf/Telesca does not fit any of the *Bellis* exceptions, the district court correctly concluded that the fifth amendment does not bar enforcement of the IRS summons.

 Greenleaf's argument that the summons is overbroad and seeks irrelevant items cannot surmount the obstacle created by the clearly-erroneous test. The IRS sought a number of financial records of Greenleaf/Telesca.[10] The summons is enforceable if the trial court finds that it seeks relevant information and is not designed to harass a taxpayer. *See United States v. Bisceglia,* 420 U.S. 141, 146, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975). We must accept the court's factual determinations unless they are clearly erroneous and must review the court's exercise of the scrutiny required under *Bisceglia. See United States v. Sun First National Bank of Orlando,* 510 F.2d 1107, 1109 (5th Cir. 1975). The trial court found that the material sought, as limited in its order, was relevant and was not sought for an illegitimate purpose. Although categories 1–3 sought by the government are broad, Special Agent Plave testified that he sought all cancelled checks because the partnership may have made unreported payments to Santell or to others on his behalf; that he sought all cash disbursement entries because the partnership may have issued cash to Santell in addition to checks; and that he sought all cash receipts entries to determine if Santell was receiving unreported commissions from clients that he brought to the firm. Special Agent Plave sought records up to 1972 although Santell left the partnership in 1970; Plave claimed that Santell had a continuing relationship with Greenleaf/Telesca after he withdrew. The trial court chose to credit much of Plave's testimony. That he carefully considered the testimony appears from the trial court's ruling that Plave made an insufficient showing of relevance as to the

---

**10.** See n. 1, *supra.*

1972 records.[11] Given Plave's testimony, the trial court's decision that "the inspection sought might [throw] light upon the correctness of the taxpayer's returns," *United States v. Matras,* 487 F.2d 1271, 1274 (8th Cir. 1973), was not clearly erroneous.

Greenleaf/Telesca partner Telesca and taxpayer Santell urge that the trial court erred in denying their motions to intervene. Under *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), Santell and Telesca may intervene in a summons enforcement proceeding against a third party only if they have a "significantly protectable interest." 400 U.S. at 531, 91 S.Ct. '534. Even then intervention is permissive,[12] and we may reverse the district judge only if he abused his discretion. *See Garrett v. United States,* 511 F.2d 1037, 1038 (9th Cir. 1975). No abuse of discretion appears in denying intervention. *Donaldson* hinted that a proprietary interest of some kind might justify intervention, and Santell and Telesca might have some proprietary interest in the old partnership records. Nevertheless, they assert substantially the same claims as Greenleaf, and his action provides adequate representation of their interests to justify the trial court's exercise of discretion.[13] *United States v. Moore,* 485 F.2d 1165, 1168 (5th Cir. 1973).

AFFIRMED.

---

11. See n. 4, *supra.*

12. In *United States v. Newman,* 441 F.2d 165, 172–73 (5th Cir. 1971), we held that in a case with facts similar to *Donaldson* (former employee attempting to stop revelation of corporate business records) the appellant had *no* right to intervene. A grant of intervention "would thwart and defeat the policies and mechanisms ordained by Congress." 441 F.2d at 172. This case differs from *Newman* in that Santell and Telesca have arguable proprietary interests.

13. In fact, recent Supreme Court cases suggest that neither Telesca nor Santell could assert the fifth amendment privilege because neither has possession of the documents nor a relationship of confidentiality such that the summons acts to compel them or their confidant to produce something. *See Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39, 48 (1976); *Couch v. United States,* 409 U.S. 322, 328–29 & 336, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973).