William BARNHART, George Barnhart, Robert J. Warner, and B & F Associates, Inc., t/a Valley Wood Products, Plaintiffs

v.

UNITED PENN BANK, Defendant.

UNITED STATES of America and Joseph C. Macaravage, Revenue Officer, Internal Revenue Service, Plaintiffs,

v.

UNITED PENN BANK, Defendant.

Civ. No. 79–0914.

United States District Court, M. D. Pennsylvania.

June 3, 1981.

Peter G. Loftus, Scranton, Pa., for plaintiffs.

Robert N. Opel, Wilkes Barre, Pa., Joseph F. Cimini, Asst. U. S. Atty., Scranton, Pa., James Hall, Tax Div. Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

### I. BACKGROUND

The matter presently before the court has a complicated procedural history which must be understood at the outset. During the spring of 1978, the Internal Revenue Service ("IRS") assessed B & F Associates, Inc. ("B & F"), for a total of $34,915.40 in unpaid social security and income tax liability.[1] This obligation was never satisfied. The IRS eventually considered the possibility that certain officers of B & F might be held responsible for the assessment under 26 U.S.C. § 6672(a) which, among other things, imposes personal liability on an individual who intentionally violates an obligation to collect a corporate tax.[2] Revenue

---

1. This sum consisted of $20,066.79 for the fourth quarter of 1977 and $14,848.61 for the first quarter of 1978. B & F, which traded under the name "Valley Wood Products," has apparently gone out of business.

2. The latter provision reads thusly:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded,

Officer John Koloski recommended that the Government invoke the latter statute against three individuals: George Barnhart, William Barnhart, and Robert J. Warner. The proposal was investigated.

On June 27, 1979, the IRS issued a summons which required a representative of the United Penn Bank to appear before Revenue Officer Joseph C. Macaravage on the subsequent July 20th in order to answer questions and produce certain B & F records.[3] The Government gave no notice of this action to the targets of the investigation. B & F, however, learned of the summons and attempted to prevent the disclosure. In a suit docketed under Civil Action No. 79–0914, the corporation sought to prevent compliance with the IRS order on a variety of constitutional and statutory grounds.[4] On July 19, 1979, this court entered a temporary restraining order prohibiting the disclosure. The parties then submitted additional briefs. In a Memorandum and Order signed on January 31, 1980, this court enjoined United Penn from acceding to the Government's request "until such time as a valid summons has been issued with appropriate notice to the concerned persons." *B & F Associates, Inc. t/a Valley Wood Products v. United Penn Bank*, 493 F.Supp. 282, 286 (M.D.Pa.1980).[5] The Government appealed and, on October 10, 1980, the suit was remanded to this court by stipulation of the parties.

The record does not clearly explain the reason for the remand. According to the stipulation, the parties felt that the Court of Appeals was "not disposed to affirm the order of the District Court."[6] Any objections to the injunction, however, seem to have been procedural. Nothing in either the stipulation of the litigants or the order issued by the Court of Appeals addressed the merits of the case. The stipulation, moreover, expressly refused to:

> prejudice the right of B & F Associates, Inc. or ... any other person, to bring a subsequent suit against the United Penn Bank (without, however, seeking to bring the Commissioner of Internal Revenue in as a party-defendant) for an injunction restraining said Bank from complying with the aforesaid summons in the absence of a judicial order compelling it to do so ...

In any event, Civil No. 79–0914 was reopened pursuant to the remand. B & F and its former officers filed an amended com-

---

> or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

**3.** The summons sought the following documents:

> Any three (3) checks signed by William Barnhart, president of B & F Associates, Inc. trading as Valley Wood Products, 3 checks for each month in the periods listed above; Any three (3) checks signed by George Barnhart, vice president of B & F Associates, Inc., trading as Valley Wood Products, three (3) checks for each month in the periods listed above; Any three (3) checks signed by Robert Warner, secretary/treasurer of B & F Associates, Inc., trading as Valley Wood Products, three (3) checks for each month of the periods listed above.
>
> This procedure should be done for each and every checking account in the name of B & F Associates, Inc. and/or Valley Wood Products.

**4.** The full caption of this action was B & F Associates, Inc. t/a Valley Wood Products v. United Penn Bank and Commissioner of Internal Revenue, Civil No. 79–0914 (M.D.Pa., filed July 17, 1979). The suit sought relief under the following provisions:

> a/ the provisions of the Internal Revenue Code § 7602 et seq.;
> b/ the Privacy Act;
> c/ The 4th Amendment Protection Against Search and Seizure;
> d/ the 14th Amendment Right to Due Process and
> e/ the common law right of the plaintiffs to be made aware of what the material requested is; its purpose and use.

**5.** The court held that under 26 U.S.C. § 7609, B & F and targeted individuals deserved notice of the summons and an opportunity to challenge the enforcement. The IRS never afforded the third parties these rights. Consequently, the summons issued to United Penn was, in effect, quashed. *B & F Associates*, 493 F.Supp. at 284–86. The rationale behind that decision is explained and reaffirmed in Parts II and III of this Memorandum.

**6.** The stipulation was entered after oral argument.

plaint seeking relief along the procedural lines allowed by the stipulation.

At this point, the litigation became further complicated by the initiation of another suit. On January 7, 1981, the IRS brought an action to compel United Penn Bank to comply with the summons to appear before Revenue Officer Macaravage. *See United States v. United Penn Bank*, Civil No. 81–0029 (M.D.Pa., filed January 7, 1981).[7] The case was originally assigned to the Honorable Richard P. Conaboy. Civil Nos. 79–0914 and 81–0029 were subsequently consolidated and Judge Conaboy agreed to transfer the latter to the author of this Memorandum and Order. B & F, Warner, and the Barnharts[8] received permission to intervene in Civil No. 81–0029. The two cases, which have been placed under the single designation of Civil No. 79–0914, are now ready for disposition. After a careful review of the applicable law, the court concludes that the Macaravage summons shall not be enforced, at least until the intervenors have had an opportunity to address the merits of the proposed disclosure.

## II. THE CONTENDING ARGUMENTS

The Government states that the authority for the summons issued to United Penn is derived from 26 U.S.C. § 7602, which permits the IRS to examine books and documents in connection with administration of the tax laws. The intervenors' burden in opposing this procedure "is a heavy one." *United States v. First American Bank*, 504 F.Supp. 90, 91 (M.D.Fla. 1980). To resist such a summons successfully, a complaining litigant must demonstrate

that the IRS has not acted in "good faith." *United States v. LaSalle National Bank*, 437 U.S. 298, 317–18 & n.19, 98 S.Ct. 2357, 2367 & n.19, 57 L.Ed.2d 221 (1978). At the outset, the Government must make a prima facie showing that it has satisfied the four elements required by *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254, 13 L.Ed.2d 112 (1964), *i. e.*, that: (1) "the investigation will be conducted pursuant to a legitimate purpose," (2) "the inquiry may be relevant to the purpose," (3) "the information sought is not already within the [IRS's] possession," and (4) "the administrative steps required by the [Internal Revenue] Code have been followed." Once this demonstration is made by affidavit, the burden shifts to the taxpayer to prove that one of these requirements has not been met or that the Government has otherwise acted in bad faith.[9] *United States v. Cortese*, 614 F.2d 914, 919 (3d Cir. 1980); *United States v. Garden State National Bank*, 607 F.2d 61, 70–71 (3d Cir. 1979). *See also United States v. Berg*, 636 F.2d 203, 205 (8th Cir. 1980); *United States v. Horton*, 452 F.Supp. 472, 474–76 (C.D.Cal.1978), *aff'd*, 629 F.2d 577 (9th Cir. 1980). At this stage in the litigation, the intervenors contend that enforcement of the summons is inappropriate, because the IRS has failed to satisfy the fourth requirement established by *Powell*: compliance with the procedural prerequisites for summonses established by the Internal Revenue Code.

In essence, B & F and the targeted individuals maintain that they were denied their statutory right to notice of the United Penn inquiry. According to 26 U.S.C. § 7609(a)(1):

---

**7.** The IRS does not have the power to enforce its own summonses. If appropriate, compliance may be compelled by order of a United States district court under 26 U.S.C. § 7402(b). The Government has invoked this statute.

**8.** These four parties shall be collectively designated as the "intervenors."

**9.** *Powell* can be read to hold that the four elements designated therein are the sole grounds on which a taxpayer can seek to quash an IRS summons. 379 U.S. at 57–58, 85 S.Ct. at 254. Yet on behalf of the majority in *LaSalle National Bank*, Justice Blackmun wrote

that "[t]hese requirements are not intended to be exclusive. Further cases may well reveal the need to prevent other forms of agency abuse of congressional authority and judicial process." 437 U.S. at 318 n.20, 98 S.Ct. at 2368 n.20. Incidentally, the *LaSalle* Court established an additional defense to enforcement of a summons. Specifically the process authorized by § 7602 will be barred if the IRS has recommended that the Justice Department initiate a prosecution that would reasonably relate to the evidence sought. *Id.* at 318, 98 S.Ct. at 2368.

(1) In general. If—

(A) any summons described in subsection (c) [e. g., a § 7602 summons] is served on any person who is a third-party recordkeeper, and

(B) the summons requires the production of any portion of records made or kept of the business transactions or affairs of any person (other than the person summoned) who is identified in the description of the records contained in the summons,

then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but no later than the 14th day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain directions for staying compliance with the summons under subsection (b)(2).

This provision establishes a two-pronged test which if, satisfied, entitles a taxpayer to notice before its records in the custody of a third-party may be examined pursuant to § 7602. First, the third-party has to be a "recordkeeper" within the meaning of the statute. Second, the summons must actually seek records of the taxpayer's business transactions. Once these factors are present, the notice requirement of § 7609(a) comes into play. *United States v. Exxon Company, U.S.A.*, 450 F.Supp. 472, 475 (D.Md.1978). *See also United States v. Manchel, Lundy and Lessin*, 477 F.Supp. 326, 328–29 (E.D.Pa.1979); *United States v.*

*Shivlock*, 459 F.Supp. 1383, 1385–87 (D.Col. 1978), *aff'd sub nom. United States v. Income Realty and Mortgage, Inc.*, 612 F.2d 1224 (10th Cir. 1979); *United States v. J. Joseph Gartland, Inc.*, 79 F.R.D. 148, 149–50 (D.Md.1978). Furthermore, 26 U.S.C. § 7609(b) grants parties entitled to notice under subsection (a) a right to intervene in any summons enforcement proceedings in order to challenge the IRS's right to the records in question. B & F and the targeted individuals insist that they have been denied their procedural rights under this statutory scheme.[10]

■ The IRS does not deny that the intervenors have satisfied the threshold requirements to qualify for notice under § 7609(a). As a bank, United Penn automatically falls with the definition of "third-party recordkeeper." 26 U.S.C. § 7609(a)(3)(A).[11] There is, moreover, no question that the Government is seeking records of the intervenors.[12] Indeed, the IRS's argument rests on a specific exception to the rule requiring that notice be given to all parties who meet the requirements of § 7609(a).

According to 26 U.S.C. § 7609(c)(2)(B), the normal requirements of subsection (a) are suspended if the summons:

(B) . . . is in aid of the collection of—

(i) the liability of any person against whom an assessment has been made or judgment rendered, or

(ii) the liability at law or in equity of any transferee or fiduciary of any person referred to in clause (i).

---

10. Of course, a party cannot qualify for intervention under § 7609(b) if it does not have the right to notice under § 7609(a). There is, moreover, a considerable body of precedent holding that a taxpayer who cannot enter the case under subsection (b) generally should not be allowed in the case at all. *Manchel*, 477 F.Supp. at 329–30; *Shivlock*, 459 F.Supp. at 1385–87; *Gartland*, 79 F.R.D. at 150–51. Thus, since the IRS challenges the right of B & F, Warner, and the Barnharts to consideration under § 7609(a) and (b), it also questions the propriety of their intervention. The court, therefore, shall treat the Government's present argument for enforcement as also a motion to reconsider the order permitting the intervenors to enter the suit.

11. For cases discussing the general meaning of this term, *see United States v. New York Telephone Company*, 644 F.2d 953 (2d Cir. 1981); *Shivlock*, 459 F.Supp. at 1384–85; *Gartland*, 79 F.R.D. at 149–50; *Exxon*, 450 F.Supp. at 475–77.

12. The central question with regard to this factor is whether the records "more directly" concern the affairs of the taxpayer or those of the third-party recordkeeper. *Exxon*, 450 F.Supp. at 477. In this case, the documents sought are clearly those of the intervenors.

In the view of the Government, the instant situation fits both of these circumstances. First, the summons served on United Penn was allegedly designed to aid in collection of the tax liability already assessed against B & F. Second, the IRS maintains that because it is investigating the possibility of invoking § 6672(a) against the targeted individuals, this case involves a species of "fiduciary" liability. Consequently, the Government concludes that both subparagraphs (c)(2)(B)(i) and (ii) exempt the intervenors from the ordinary notice obligation.

As this court noted in the original Memorandum and Order issued in Civil No. 79–0914, the IRS's "argument has some facial appeal." *B & F Associates*, 493 F.Supp. at 284. Yet the relevant case law clearly provides that the literal wording of a statute may not be interpreted so broadly that the provision receives a sweep beyond that desired by Congress. *Watt v. Alaska*, —— U.S. ——, ——, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981); *Stafford v. Briggs*, 444 U.S. 527, 535–36, 100 S.Ct. 774, 780, 63 L.Ed.2d 1 (1980); *United States v. Pavlick*, 507 F.Supp. 359, 362 (M.D.Pa.1980). After an examination of the enactment's history, the court remains convinced that the Government's contention is incorrect.

### III. CONGRESSIONAL INTENT

Section 7609 is by no means a simple law to apply.[13] The statute resulted from a reaction to several decisions by the United States Supreme Court which granted the IRS broad latitude in the enforcement of administrative summonses. *See, e. g., United States v. Bisceglia*, 420 U.S. 141, 148–51, 95 S.Ct. 915, 919, 43 L.Ed.2d 88 (1975); *Ryan v. United States*, 379 U.S. 61, 62, 85 S.Ct. 232, 233, 13 L.Ed.2d 122 (1964); *United States v. Powell*, 379 U.S. at 57–59, 85 S.Ct. at 254.[14] Perhaps the most controver-

sial of these precedents was *Donaldson v. United States*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), which concerned the efforts of a taxpayer to intervene in a summons enforcement action the IRS had initiated against his accountant. The majority[15] held that in such instances intervention would only be appropriate if the taxpayer could demonstrate a "protectable interest" barring disclosure, *e. g.*, an evidentiary privilege, proof that the Government had committed an abuse of process. *Id.* at 530–31, 91 S.Ct. at 542. In effect, the decision required that the challenging litigant demonstrate a strong likelihood of success on the merits before it could even enter the case. This conclusion was widely criticized as too great a restriction on the procedural rights of taxpayers. *See Shivlock*, 459 F.Supp. at 1386.

In 1976, Congress enacted a major overhaul of the Internal Revenue Code. The reforms included important changes in the issuance of summonses under § 7602. To a large extent, these procedural modifications sprang from a conviction that taxpayers deserved greater safeguards against improper disclosure of records held by third parties. The House Ways and Means Committee articulated this conclusion thusly:

> The use of the administrative summonses, including the third-party summons, is a necessary tool for the IRS in conducting many legitimate investigations concerning the proper determination of tax. The administration of the tax law requires that the Service be entitled to obtain records, etc., without an advance showing of probable cause or other standards which usually are involved in the issuance of a search warrant. On the other hand, the use of this important investigative tool should not unreasonably infringe on the civil rights

---

**13.** In *Shivlock*, 459 F.Supp. at 1384, Chief Judge Winner wrote that the provision has created a "continuing saga ... of headaches" for the courts.

**14.** The Court recently reaffirmed many aspects of these precedents in *United States v. Euge*,

444 U.S. 707, 714–19, 100 S.Ct. 874, 879, 63 L.Ed.2d 141 (1980).

**15.** Justices Douglas and Brennan concurred but refused to join in the opinion of the Court. *See* 400 U.S. at 536–41, 91 S.Ct. at 545 for their separate positions.

of taxpayers, including the right to privacy.

.   .   .   .   .

The committee believes that many of the problems in this area would be cured if the parties to whom the records pertain were advised of the service of a third-party summons, and were afforded a reasonable and speedy means to challenge the summons where appropriate. While the third-party witness also has the right of challenge, even under present law, the interest of the third-party witness in protecting the privacy of the records in question is frequently far less intense than that of the person to whom the records pertain.

[1976] U.S.Cong. & Admin.News 2897, 3203. The Senate Finance Committee Report contained the identical language. [1976] U.S. Cong. & Admin.News 3439, 3797–98. On the basis of these determinations, Congress passed the statutory scheme embodied in § 7609, the relevant portions of which have already been described. As noted by our Court of Appeals, the primary thrust of this provision "was to require that the target taxpayer be given notice so that he would be able to assert appropriate defenses." *United States v. Pittsburgh Trade Exchange, Inc.*, 644 F.2d 302 (3d Cir. 1981). See also Mertens, *Law of Federal Income Taxation*, § 7609 (1981 Cum.Sup.).[16]

The instant litigation turns on the intent behind § 7609(c)(2), which allegedly relieves the IRS of any responsibility to provide the intervenors with the procedures normally required. The House Committee described the purpose behind this subsection thusly:

However, this notice procedure will not apply in the case of a summons used solely for purposes of collection. Also,

this procedure would not apply in cases where the only information requested by the Service was whether or not the third-party record keeper had records with respect to a particular person (without requesting any information contained in those records).

Thus, where the Service has made an assessment or obtaining [sic] a judgment against a taxpayer and serves a summons on a bank, for example, in order to determine whether the taxpayer has an account in that bank, and whether the assets in that account are sufficient to cover the tax liability which has been assessed, the Service is not required, under the committee amendment, to give notice to the taxpayer whose account is involved. Also, notice is not required where the Service is attempting to enforce fiduciary or transferee liability for a tax which has been assessed. (Otherwise, there might be a possibility that the taxpayer transferee or fiduciary would use the 14-day grace period, which is provided under the provisions outlined above ([sic] to withdraw the money in his account, thus frustrating the collection activity of the Service). However, this exception does not apply where the Service is attempting to obtain information concerning the taxpayer's account for purposes other than collection as, for example, where the Service is attempting to compute the taxpayer's taxable income by use of the "net worth" method.

[1976] U.S.Cong. & Admin.News at 3206. The Senate Report included essentially the same wording. [1976] U.S.Cong. & Admin. News at 3800–01.

█ Concededly, this language could have been expressed in a more concise manner. A careful examination of the passage,

---

**16.** Both Committee Reports gave the following illustration which is pertinent to this case:

... For example, if the [IRS] summons a bank to furnish records with respect to all deposits and withdrawals of the X corporation for the year 1976, the X corporation is to receive contemporaneous notice of the summons, because it is the records concerning the transactions of the X corporation which are being examined. Where more than one

person is identified in the description of the records as a person the records of whose transactions are to be inspected, then all such persons are to have the right to receive notice under these provisions, and are also to have the right to challenge the summons, as discussed below. [footnote omitted].

*See* [1976] U.S.Cong. & Admin.News at 3204 (House); [1976] U.S.Cong. & Admin.News at 3798 (Senate).

however, undermines the Government's position. As previously explained, § 7609(c)(2)(B) establishes two possible exemptions. The first, subparagraph (i), occurs when the summons is issued to assist in the collection of a tax obligation already assessed. The Committee Reports emphasize that the provision is limited to instances in which disclosure is sought "for the purpose of collection." [1976] U.S.Cong. & Admin.News at 3206 and 3801.[17] The example given involves a situation where the IRS merely attempts to learn if the third-party has custody of assets that can be used to satisfy the obligation assessed against the original taxpayer. In the present matter, however, the Government is not solely seeking to collect B & F's obligations. On the contrary, it is primarily investigating the possibility that Warner and the Barnharts can be held liable for the debt. Nothing in § 7609(c)(2)(B)(i) or its legislative history permits the federal authorities to bootstrap a regular audit into a "collection" merely because any liability discovered with regard to the real targets of the inquiry (in this case, Warner and the Barnharts) is contingent upon the debt already assessed against another taxpayer. On the contrary, that result would run afoul of the stated Congressional policy that notice must be given when records held by the third-party are sought for an investigation.[18]

Subparagraph (ii) presents a more difficult problem. As previously quoted, the provision exempts from the notice requirement summonses issued "in aid of the collection of the liability at law or in equity of a transferee or fiduciary of" an assessed taxpayer. The question currently at issue is whether § 6672(a) gives rise to a "fiduciary" obligation on the part of Warner and the Barnharts sufficient to permit the Government to obtain the records without notice. After a careful review of the relevant case law, the court cannot agree with the IRS.

Nothing in § 7609 or its legislative history defines the term "fiduciary." For this reason, it is necessary to turn to other sections of the Internal Revenue Code in order to ascertain the proper meaning. In 26 U.S.C. § 7701, Congress established general definitions for certain terms that are often used in the tax statutes. The provision states that these meanings are to apply throughout the Internal Revenue Code "when not otherwise distinctly expressed or manifestly incompatible with the intent thereof." At § 7701(a)(6), "fiduciary" is defined as "a guardian, trustee, executor, administrator, receiver, conservator, or any other person acting in any fiduciary capacity for any person." Warner and the Barnharts certainly cannot fit within the specific terms included in this definition. "Guardian," "trustee" and the other relevant designations all refer to a legal relationship in which the "fiduciary" manages property for the benefit of the taxpayer. There is no allegation that one or more of the targeted individuals performed such a function for B & F. Consequently, the Government can only prevail on this issue if the clause "or acting in any fiduciary capacity for any person" expands the meaning of the subparagraph to include persons liable for the taxpayer's debts merely because of § 6672(a). That proposition is unpersuasive in light of other authorities.

Congress has authorized the Secretary of the Treasury to issue regulations on the enforcement of the tax laws. 28 U.S.C. § 7805. These promulgations merit great judicial deference and may only be overturned if they are "unreasonable" and

---

17. Indeed, the House Report specifically states that § 7609(c)(2)(B)(i) only applies when the records are summoned "*solely* for the purposes of collection." [1976] U.S.Cong. & Admin. News at 3206 (emphasis added).

18. Much of the controversy underlying this case seems to have arisen from a conceptual disagreement over the identity of the real targets. The Government's position that the sum-

mons was issued merely to assist in the collection of the B & F assessment would have been stronger if the records sought only pertained to that corporation. Yet the manifest intent of the IRS is to uncover information about Warner and the Barnharts in order to consider new assessments against them. In view of the totality of the circumstances, the court holds that the inquiry is not a "collection."

"plainly inconsistent with the revenue statutes." *Fulman v. United States*, 434 U.S. 528, 531, 533, 98 S.Ct. 841, 843, 55 L.Ed.2d 1 (1978). Significantly, the regulations that concern § 7701(a)(6) indicate that the targeted individuals cannot fall within the ambit of the subparagraph. According to Treas.Reg. § 301.7701–6 (1981):

"Fiduciary" is a term which applies to persons who occupy positions of peculiar confidence toward others, such as trustees, executors, and administrators. A fiduciary is a person who holds in trust an estate to which another has the beneficial title or in which another has a beneficial interest, or receives and controls income of another, as in the case of receivers. A committee or guardian of the property of an incompetent person is a fiduciary.

Even more significantly, Treas.Reg. § 301.-7701–7 (1981) distinguishes "fiduciary" from "agent" thusly:

There may be a fiduciary relationship between an agent and a principal, but the word "agent" does not denote a fiduciary. An agent having entire charge of property, with authority to effect and execute leases with tenants entirely on his own responsibility and without consulting his principal, merely turning over the net profits from the property periodically to his principal by virtue of authority conferred upon him by a power of attorney, is not a fiduciary within the meaning of the Internal Revenue Code. In cases where no legal trust has been created in the estate controlled by the agent and attorney, the liability to make a return rests with the principal.

These passages underscore the narrow nature of the term "fiduciary" when used in the Internal Revenue Code. As indicated by the cited regulations, the concept presupposes a legal relationship in which a party "holds in trust an estate" for the benefit of the taxpayer. Therefore, the absence of such circumstances renders "fiduciary" liability impossible for the purposes of the Internal Revenue Code.

The relevant case law concurs with this rationale. The definition of "fiduciary" currently codified in § 7701(a)(6) has existed in essentially the same form for many years, although it has been renumbered on various occasions as the tax laws have been updated. Decisions interpreting the statute's predecessors have agreed that the term only refers to situations in which one person or entity has legal control of property managed for the benefit of another. In *Ferguson v. Fortsmann*, 25 F.2d 47, 48 (3d Cir. 1928), for example, our Court of Appeals held that a company came within the definition of § 7701(a)(6), because:

[i]t received and held . . . dividends in trust for some person whose identity was unascertained . . . . It was thus a fiduciary, within the meaning of [the Internal Revenue Code and its regulations].

*See also Fidelity Trust Company v. Commissioner of Internal Revenue*, 141 F.2d 54, 57 (3d Cir. 1944); *Hart v. Commissioner of Internal Revenue*, 54 F.2d 848, 850–51 (1st Cir. 1932). These authorities are still valid. In Revenue Ruling 71–119, the IRS Commissioner had to decide whether a special master appointed by a United States district court to administer certain property was a "fiduciary" under § 7701(a)(6). He ruled that the definition was not applicable. To a large extent, the decision hinged on the following observation: "Neither the court nor the special master had title to the settlement fund for the purpose of protecting or conserving it for the beneficiaries under the ordinary rules applied in chancery or probate courts."

■ This construction of the term, which requires that the "fiduciary" have control of the assessed assets, comports with the overall policy of § 7609. As previously discussed, the statute is designed to protect the procedural rights of taxpayers under investigation. In § 7609(c)(2)(B), Congress established the "collection" exceptions. The Committee Reports explained that the special rules exist for one reason, *viz.*, once a tax debt has been formally assessed and funds are about to be seized, there is too great a danger that the party in control of the assets will conceal them if notice is given. [1976] U.S.Cong. & Admin.News at

3206 and 3800–01. Subparagraph (i), which concerns instances where the taxpayer itself controls property the IRS intends to collect, clearly serves this end.[19] The same must be true of subparagraph (ii) or, otherwise, the exemption would not further its articulated purpose. Accordingly, the court interprets the latter provision to have the following meaning: When a person or entity which has legal control over property to be managed for the benefit of an assessed taxpayer is responsible for the debts of that taxpayer under the Internal Revenue Code,[20] the Government may issue summonses to third-parties who hold the property without serving notice to the person or entity in control, if the summons is intended to further actual collection of the debts. This construction insures that the § 7609(c)(2)(B)(ii) exception is limited to "fiduciaries" within the meaning of the tax laws and that, as intended by Congress, it remains within the context of collection.

■ This decision disposes of the entire exemption issue, even if it is assumed that under § 6672(a) Warner and the Barnharts can be held liable for B & F's tax obligations. First, there is no allegation that the targeted individuals satisfy the requirement for fiduciaries. Second, the IRS is not preparing to seize property in their control, and the policy behind subparagraph (ii) is, therefore, not implicated. In view of these considerations, the notice requirement is fully applicable.[21]

**19.** Incidentally, the fact that § 7609(c)(2)(B)(i) requires that the taxpayer have control of the assets is not impaired by the fact that the funds are in the hands of a third-party. The example used in the legislative history concerns a cash deposit in the taxpayer's bank account. Physically, the money is held by the bank. In reality, the taxpayer has control of the assets and could withdraw them on notice of a summons. This principle also applies to fiduciary control under § 7609(c)(2)(B)(ii).

**20.** For the provision establishing the instances in which this liability can occur, *see* 26 U.S.C. § 6901(a)(1)(B).

**21.** In its original Memorandum and Order in this case, this court stated:

## IV. CONCLUSION

The court has reaffirmed its decision that B & F and the targeted individuals have full rights to notice and intervention under § 7609. The only remaining question concerns the procedure for final disposition of the litigation. Two options exist. First, the court could forbid United Penn to comply with the IRS's disclosure request until the Government performed the formalities of issuing a new summons and repeating the entire enforcement process. Under the second plan, the parties simply would be directed to address the merits of the controversy. The court shall choose the latter course.

In *United States v. New York Telephone Company*, 2 Cir., 644 F.2d 953, the IRS attempted to enforce a summons issued to a third party without notice to the targeted taxpayer. The district judge ruled for the Government on the ground that the third-party was not a "recordkeeper" and, thus, the procedural safeguards of § 7609 had not been triggered. The Court of Appeals for the Second Circuit reached the opposite conclusion and vacated the judgment with instructions that the district court both permit intervention and reach the merits. *Id.* at 960. The decision stands for the proposition that once a party improperly denied notice establishes its rights under § 7609, the correct remedial course is: (1) to guarantee that the taxpayer receives its full procedural rights and (2) to decide the case.

Application of the *New York Telephone Company* rationale is particularly appropri-

It should be noted that, consistent with the legislative history, the term 'fiduciary' as used in 26 U.S.C. § 7609(c)(2)(B)(ii) refers to the person in possession of the assets from which a tax assessment or judgment is sought to be satisfied. The Service does not contend that the summons challenged here was issued to determine whether any corporate officers have custody of B & F assets from which the tax assessment may be satisfied.

On the basis of the foregoing discussion, this conclusion is reaffirmed with the understanding that "possession" includes legal control.

ate in the instant situation. Unfortunately, this litigation has been prolonged by an involved procedural history. There is no doubt that the intervenors have full notice of the summons.[22] Furthermore, they are now in a procedural position to assert their legal arguments against disclosure. No purpose would be served by delaying resolution of the controversy. Accordingly, the court shall issue a final ruling once the parties have one last opportunity to address the merits.

Within ten (10) days of their receipt of this Memorandum and Order, the intervenors shall submit their objections to enforcement of the summons. They must file a brief and whatever documentary evidence they have to rebut the Government's affidavits. During this period, United Penn shall either register objections or inform the court of its decision not to do so. The Government will then have ten (10) days in which to respond.

### ORDER

Now, this 3rd day of June 1981, the following are ordered:

(1) the right of B & F Associates, Inc., William Barnhart, Robert J. Warner, and George Barnhart to intervene is reaffirmed;

(2) in Civil No. 79–0914, United Penn Bank is enjoined from complying with the IRS summons concerning the records of B & F Associates, Inc., until the court reaches a final decision on the merits;

(3) the decision on enforcement of the summons shall be reserved pending the expansion of the record required by this Memorandum and Order;

(4) the parties shall complete the briefing schedule set forth in the final paragraph of the accompanying Memorandum; and

(5) the Clerk of Court shall maintain designation of Civil No. 79–0914 as an

---

22. Indeed, a copy of the document was attached to B & F's original filing in Civil No. 79–0914.

open case until a final decision is reached on the merits.