**Sheila Ann IP, Petitioner–Appellant,**

v.

**UNITED STATES of America; Martin Lum Respondents–Appellees.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 1999.

Filed March 7, 2000.

Ellen P. DelSole, United States Department of Justice, Tax Division, Washington, D.C., for the respondent-appellant.

Before: ALDISERT,* O'SCANNLAIN and HAWKINS, Circuit Judges.

Opinion by Judge ALDISERT; Concurrence by Judge O'SCANNLAIN.

ALDISERT, Circuit Judge:

The issue on appeal is whether notice is required under 26 U.S.C. § 7609(a) when the Internal Revenue Service summons a third-party record-keeper to produce financial records of a person who has no outstanding tax liability and who has no legal relationship with any person against whom a tax assessment has been made. Appellant Sheila Ann Ip had bank accounts in her own name at Cathay Bank and the Bank of America. Under the authority of 26 U.S.C. § 7602(a),[1] the IRS summonsed her banks, without notice to her, to produce her accounts to aid in its investigation of Diamond Trade Ltd., a Hong Kong corporation for which Ip's fiance was an agent. Ip appeals from the magistrate judge's dismissal of her petition to quash these summonses.

Under § 7609(a)(1), a party is entitled to notice if:

Karen L. Hawkins, Taggart & Hawkins, San Francisco, California, for the petitioner-appellant.

---

* Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

1. The IRS derives its authority to summon third parties from § 7602(a):

> For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized—
> (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
> (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for the tax....

26 U.S.C. § 7602(a)(*l*)-(2).

(A) any summons described in subsection (c) is served on any person who is a third-party record-keeper, and

(B) the summons requires the production of any portion of records made or kept of the business transactions or affairs of any person (other than the person summoned) who is identified in the description of the records contained in the summons....

26 U.S.C. § 7609(a)(1)(A)-(B).[2]

The district court, magistrate judge presiding, concluded that Ip was not entitled to notice of the summonses and therefore dismissed her petition for lack of subject matter jurisdiction under § 7609(b)(2)(A).[3] Ip appeals and contends that her petition should not have been dismissed, because she was entitled to notice of the summonses under § 7609(a)(1). The IRS urges us to affirm the dismissal, relying on § 7609(c)(2)(B), which suspends the normal requirements of § 7609(a)(1) if the summons:

(B) ... is in aid of the collection of

(i) the liability of any person against whom an assessment has been made or judgment rendered, or

(ii) the liability at law or in equity of any transferee or fiduciary of any person referred to in clause (i).[4]

The IRS argues that inasmuch as an assessment had been levied against Diamond Trade, clause (i) permits a summons to be issued against any third party without notice.

2. The statute was reformed by the IRS Restructuring and Reform Act of 1998 and now reads:

If any summons to which this section applies requires the giving of testimony on or relating to, the production of any portion of records made or kept on or relating to, or the production of any computer software source code (as defined in 7612(d)(2)) with respect to, any person (other than the person summoned) who is identified in the summons, then notice of the summons shall be given to any person so identified within 3 days....

26 U.S.C. § 7609(a)(1) (1999). Because the summonses here were served before July 22,

We must decide which statute should apply § 7609(a), the general rule entitling affected persons to notice of third-party summonses, or § 7609(c)(2)(B), an exception to the third-party notice rule. We hold that Ip was entitled to notice under § 7609(a) and reverse the district court's judgment determining that she lacked standing to challenge the IRS summonses.

Jurisdiction in the district court is disputed. Ip contends that the court had jurisdiction pursuant to 28 U.S.C. § 1331 and 26 U.S.C. § 7609(b). The parties executed written consents for entry of final judgment by a magistrate judge pursuant to 28 U.S.C. § 636(c). This court has jurisdiction under 28 U.S.C. §§ 636(c)(3), 1291. The appeal was timely filed under Rule 4(a), Federal Rules of Appellate Procedure.

■ The district court's conclusion that it lacks subject matter jurisdiction is subject to de novo review. *Central Green Co. v. United States*, 177 F.3d 834, 835 (9th Cir.1999).

I.

Sheila Ip was living with and engaged to marry Chun Lung Siu, a resident of the United States and citizen of the People's Republic of China. Chun Lung Siu and two of his family members were wholesale jewelry agents in the United States for the Hong Kong corporation Diamond Trade Limited. Although Diamond Trade did not have an office or place of business in

1998, the effective date of the act, the prior statute controls.

3. The clause for third-party summonses reads: "[A]ny person *who is entitled to notice* of a summons under subsection (a) shall have the right to begin a proceeding to quash such summons...." 26 U.S.C. § 7609(b)(2)(A) (emphasis added). Thus, if a person is not entitled to notice under § 7609(a), he or she has no standing to initiate an action to quash the summons.

4. As a result of the IRS Restructuring and Reform Act of 1998, this is now codified at 26 U.S.C. § 7609(c)(2)(D).

the United States, the corporation, Ip and several of members of the Siu family maintained U.S. bank accounts at Bank of America and Cathay Bank.

The IRS believed that Ip deposited sale proceeds into her bank accounts on behalf of Diamond Trade and then wired the money to Hong Kong without paying taxes. Consequently, the IRS made an assessment against Diamond Trade on November 11, 1997, and issued summonses to Bank of America and Cathay Bank, third-party record-keepers under 26 U.S.C. § 7609(a)(3)(A), in which the Service requested the financial records of Diamond Trade, Ip, Chun Lung Siu and several others believed to be involved in Diamond Trade's operations in the United States. The IRS served the summonses on Cathay Bank on March 7, 1998, and on Bank of America on March 4, 1998, but did not give notice to the bank account holders. On March 24, 1998, Ip and several other affected bank account holders individually filed petitions in district court to quash the summonses because of improper service and lack of notice.

Because the first set of summonses contained typographical errors, the IRS served a second set on the two banks from March 30–31, 1998. Again, none of the individual bank account holders received notice of the summonses.

On April 9, 1998, Ip and several other bank account holders filed another petition to quash the second set of summonses. The government argued that the petitioners lacked standing to quash the summonses and thereby moved to dismiss the petitions for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure. The district court determined that the petitioners were not entitled to notice under 26 U.S.C. § 7609(c)(2)(B), because the summonses were issued "in the aid of the collection of" Diamond Trade's tax liability, and thus granted the United States' motion to dismiss.

Prior to this action, Sheila Ip had no outstanding tax liability and has never been under investigation by the IRS. Furthermore, she has never been an employee, owner, officer or director of Diamond Trade. On appeal, she contends that the district court erred by dismissing her petition for want of subject matter jurisdiction, arguing she had standing to petition the court to quash the summonses because she was entitled to notice of the third-party summonses pursuant to 26 U.S.C. § 7609(a). The IRS contends that Ip was not entitled to notice because the summonses were issued "in aid of the collection" of Diamond Trade's tax liability under § 7609(c)(2)(B), and therefore exempt from § 7609(a)'s general notice requirement for third-party summonses.

### II.

To decide whether the general rule requiring notice or the exception thereto should apply, we turn to the legislative history of the relevant statutes for assistance. We deem this necessary because as aptly and euphemistically stated by Chief Judge Nealon, "[c]oncededly, this language [§ 7609(c)(2)(B)] could have been expressed in a more concise manner." *Barnhart v. United Penn Bank,* 515 F.Supp. 1198, 1204 (M.D.Pa.1981).

Congress originally established a statutory system for the IRS to issue summonses to third parties, such as banks, to acquire information regarding taxpayers, but amended the summons process in the Tax Reform Act of 1976 to include a right of notice to parties whose records were being summonsed. *See* Tax Reform Act of 1976, Pub.L. No. 94–455, 90 Stat. 1520 (codified as amended in scattered sections of 26 U.S.C.); *see Barnhart,* 515 F.Supp. at 1203–1204 (examining events leading up to the adoption of the Tax Reform Act).

In *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), the Court held that taxpayers could only intervene in a third-party summons case where they could demonstrate a "significantly protectable interest" barring disclosure, e.g., a legal privilege such as an

evidentiary privilege. *Id.* at 530–531, 91 S.Ct. 534. The Court's holding was widely criticized as placing too great a restriction on the procedural rights of taxpayers. *See, e.g., United States v. Shivlock,* 459 F.Supp. 1383, 1386 (D.Colo.1978).

Reacting to the *Donaldson* opinion, Congress enacted a major overhaul of the Internal Revenue Code in 1976. The reforms included important changes in the issuance of summonses under § 7602. To a large extent, these procedural modifications sprang from a conviction that taxpayers deserved greater safeguards against improper disclosure of records held by third parties. *See Barnhart,* 515 F.Supp. at 1203. The House Ways and Means Committee explained the impetus for the Act:

> The use of the administrative summons, including the third-party summons, is a necessary tool for the IRS in conducting many legitimate investigations concerning the proper determination of tax. The administration of the tax laws requires that the Service be entitled to obtain records, etc., without an advance showing of probable cause or other standards which usually are involved in the issuance of a search warrant. On the other hand, the use of this important investigative tool should not unreasonably infringe on the civil rights of taxpayers, including the right to privacy.
>
> . . . .
>
> The committee believes that many of the problems in this area would be cured if the parties to whom the records pertain were advised of the service of a third-party summons, and were afforded a reasonable and speedy means to challenge the summons where appropriate. While the third-party witness also has this right of challenge, even under present law, the interest of the third-party witness in protecting the privacy of the records in question is frequently far less intense than that of the person to whom the records pertain.

H.R.Rep. No. 94–658, at 307 (1975), *reprinted in* 1976 U.S.C.C.A.N. 2897, 3203. The Senate Finance Committee Report contained identical language. *See* S.Rep. No. 94–938, pt. 1, at 368–369 (1976), *reprinted in* 1976 U.S.C.C.A.N. 3439, 3797–3798.

The purpose of the notice provision is to allow people to assert defenses, such as the attorney-client privilege or relevancy objections, that would be unavailable to them in the absence of notice. H.R.Rep. No. 94–658, at 309, *reprinted in* 1976 U.S.C.C.A.N. at 3205 ("[T]he purpose of this procedure is to facilitate the opportunity of the notice to raise defenses which are already available under the law ... and that these provisions are not intended to expand the substantive rights of these parties."). Thus, a person entitled to notice is allotted no extra protection from the IRS's power to summons; rather, § 7609(b)(2) merely grants standing to the person entitled to notice so that he or she may challenge the summons in district court. *See* 26 U.S.C. § 7609(h) ("The United States district court for the district within which the person to be summonsed resides or is found shall have jurisdiction to hear and determine any proceeding brought under [§ 7609](b)(2), (f), or (g).").

Congress recognized that giving taxpayers notice in certain circumstances would seriously impede the IRS's ability to collect taxes. For example, in § 7609(c)(2)(B)(i), Congress provided that notice is not necessary where the summons is issued "in aid of the collection of [ ] the liability of any person against whom an assessment has been made." The House Ways and Means Committee explained the purpose behind the § 7609(c)(2)(B)(i) exception to the § 7609(a) notice rule:

> However, this [notice] procedure will not apply in the case of a summons used solely for purposes of collection....
>
> Thus, where the Service has made an assessment or obtained a judgment against a taxpayer and serves a sum-

mons on a bank, for example, in order to determine whether the taxpayer has an account in that bank, and whether the assets in that account are sufficient to cover the tax liability which has been assessed, the Service is not required, under the committee bill, to give notice to the taxpayer whose account is involved.... However, this exception does not apply where the Service is attempting to obtain information concerning the taxpayer's account for purposes other than collection as, for example, where the Service is attempting to compute the taxpayer's taxable income by use of the "net worth" method.

H.R.Rep. No. 94–658, at 310, *reprinted in* 1976 U.S.C.C.A.N. at 3206; *see also* S.Rep. No. 94–938, pt. 1, at 371–372, *reprinted in* 1976 U.S.C.C.A.N. at 3800–3801 (containing essentially the same language).

Congress also recognized that to give notice to a person who is a fiduciary or transferee of an assessed taxpayer gives rise to a heightened risk of tax fraud. The House Ways and Means Committee explained:

> [W]here the Service has made an assessment or obtained a judgment against a taxpayer and serves a summons on a bank, ... the Service is not required ... to give notice to the taxpayer whose account is involved. Also, notice is not required where the Service is attempting to enforce fiduciary or transferee liability for a tax which has been assessed. (Otherwise, there might be a possibility that the taxpayer, transferee or fiduciary would use the 14–day grace period, which is provided under the provisions outlined above, to withdraw the money in his account, thus frustrating the collection activity of the Service.)

H.R.Rep. No. 94–658, at 310, *reprinted in* 1976 U.S.C.C.A.N. at 3206.

Although § 7609 does not define the term "fiduciary," § 7701(a)(6) defines it as "a guardian, trustee, executor, administrator, receiver, conservator, or any person acting in any fiduciary capacity for any person." The Secretary of the Treasury has issued regulations further defining the term "fiduciary":

> Fiduciary is a term that applies to persons who occupy positions of peculiar confidence toward others, such as trustees, executors, and administrators. A fiduciary is a person who holds in trust an estate to which another has a beneficial interest, or receives and controls income of another, as in the case of receivers. A committee or guardian of the property of an incompetent person is a fiduciary.

Treas. Reg. § 301.7701–6(b)(1) (1996).

It must be conceded that the language of the exception-to-notice statute is fraught with ambiguity, because if clause (i) of § 7609(c)(2)(B) is interpreted literally, it is virtually impossible to conceive of any situation where the notice requirement would apply once an assessment of tax liability against anyone has been made.

### III.

■ The courts have had difficulty in interpreting the statute. In *Jordan v. United States,* Civ.A.96–M–7–H, 1997 WL 148560, at *2 (W.D.Va. March 20, 1997), an unpublished memorandum opinion, the court held that "the IRS need not provide notice of a summons issued in aid of collection to anyone, and no person has a right to move to quash such a summons." The court explained that

> the identity of the taxpayer seeking to quash a summons is immaterial once it is decided that the summons qualifies as a collection summons under § 7609(c)(2)(B)(i); even if the taxpayer owes no tax to the IRS and the records sought from a third-party relate to her, she is nonetheless powerless to challenge the summons.

*Id.; see Barmes v. United States,* 199 F.3d 386, 389–390 (7th Cir.1999) (per curiam) ("[A]s long as the third-party summons is issued to aid in the collection of any assessed tax liability the notice exception applies."); *Davidson v. United States,* 149

F.3d 1190, 1998 WL 339541, at *2–3 (10th Cir.1998) (unpublished table decision) (holding that plaintiff had no standing to quash summons so long as information relevant to tax collection could be gained from the party being summonsed). Under the teachings of these cases, any record of any taxpayer can be summonsed under § 7609(c)(2)(B), so long as the IRS can show that the summons is related to the collection of another's assessed tax liability.

These cases all involved either persons who had recognizable legal interests in the accounts summonsed or individuals who had fiduciary relationships with the person against whom an assessment was made. For example, the husband and wife implicated in *Barmes* were general partners in a partnership that had payroll taxes, penalties and interest assessed against it and both were jointly and severally liable for the debts of the partnership. *See Barmes,* 199 F.3d at 387–388. In *Davidson,* the person whose records were summonsed was the spouse of the tax assessed party, and the IRS had evidence that the assessed person may have transferred funds into the account of the non-assessed spouse. *Davidson,* 1998 WL 339541, at *1. Under these circumstances it is obvious that a fiduciary relationship existed between the account holder and the person against whom an assessment was made. *See also Jordan,* 1997 WL 148560, at *1 (spouses as fiduciaries).

Two courts have rejected the IRS interpretation of "aid in collection" on the ground that it is too broad and contrary to the intent of Congress in enacting the Tax Reform Act of 1976. The District Court for the Southern District of Florida held that the exception to the notice requirement applies "narrowly to summonses issued to third-party record-keepers where the *taxpayer* whose tax liability has been assessed has a recognizable interest in the records summoned." *Robertson v. United*

*States,* 843 F.Supp. 705, 706 (S.D.Fla. 1993). In *Barnhart* the District Court for the Middle District of Pennsylvania held that § 7609(c)(2)(B)(i) cannot be used by the IRS to "bootstrap a regular audit into a 'collection' merely because any liability discovered with regard to the real targets of the inquiry [the person summonsed] is contingent upon the debt already assessed against another taxpayer." 515 F.Supp. at 1205.

The IRS argues that it may summons the Ip bank account without notice to her because it made an assessment against Diamond Trade and the literal language of § 7609(c)(2)(B)(i) provides that it may summons without notice "in aid of the collection of the liability of any person against whom an assessment has been made." Such a reading of the statute, as endorsed by the decisions in *Jordan* and *Barmes,* renders totally meaningless the explicit language of § 7609(c)(2)(B)(ii) which suspends notice when the summons is in aid of collection of "the liability ... of any transferee or fiduciary of any person referred to in clause (i)." Moreover, in our view it vitiates completely the legislative purpose of providing notice to third parties because it would be difficult to hypothesize any situation where notice would be required once the IRS makes an assessment against any taxpayer and seeks to collect the tax.

To be sure, the IRS can find support and comfort for its position by relying solely on the literal language of clause (i). But the masters of the American legal tradition have warned us not to become strict literalists in construing the language of statutes. Benjamin Cardozo wrote that "[w]hen things are called by the same name it is easy for the mind to slide into an assumption that the verbal identity is accompanied in all its sequences by identity of meaning."[5] Oliver Wendell Holmes told us: "A word is not a crystal, transpar-

---

**5.** *Lowden v. Northwestern Nat'l Bank & Trust Co.,* 298 U.S. 160, 165, 56 S.Ct. 696, 80 L.Ed. 1114 (1936).

ent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." [6] Learned Hand said that "it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." [7]

Although contemporary courts are fond of stating that "[t]he starting point in every case involving the construction of a statute is the language itself," [8] most current approaches abjure a strictly semantic approach. It is often necessary, as here, to ascertain the legislative purpose by the examination of legislative history as we have set forth in Part II.[9] Lord Denning described a transition from nineteenth century "strict constructionists" to twentieth century "intention" seekers: "The strict constructionists go by the letter of the document. The 'intention seekers' go by the purpose or intent of the makers of it." [10] Indeed, proper statutory construction, in the dominant modern view, requires recognition and implementation of the underlying legislative intention or purpose, and the court, the theory holds, must

accommodate the societal claims and demands reflected in that inquiry.[11] To accomplish this task, as Justice Roger J. Traynor put it, we need "literate, not literal" judges,[12] lest a court make a construction within the statute's letter, but beyond its intent.

Respecting the statutory language of clauses (i) and (ii), as we must, in light of the legislative purpose, we believe that each clause must be interpreted in terms of the ownership interest in the records that are sought by the summons. Because clause (ii) explicitly refers to the "transferee or fiduciary of any person referred to in clause (i)," it must necessarily follow that the clause (i) person must be one who has some legal interest or title in the object of the summons. To hold otherwise, as urged by the IRS, the exception to the notice rule would swallow the rule itself and thus defy the stated purpose of the legislation as reflected by the committee reports we have set forth in Part I. ("The committee believes that many of the problems in this area would be cured if the parties to whom the records pertain were advised of the service of a third-party summons, and were afforded a reasonable and speedy means to challenge the summons where appropriate.... [T]he purpose of this procedure is to facilitate the opportu-

6. *Towne v. Eisner,* 245 U.S. 418, 425, 38 S.Ct. 158, 62 L.Ed. 372 (1918).

7. *Cabell v. Markham,* 148 F.2d 737, 739 (2d Cir.), *aff'd,* 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945).

8. *International Bhd. of Teamsters v. Daniel,* 439 U.S. 551, 558, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979) (quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) (Powell, J., concurring)).

9. *See, e.g., Brown v. General Servs. Admin.,* 425 U.S. 820, 825, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) ("Congress simply failed explicitly to describe § 717's [of the Civil Rights Act of 1964] position in the constellation of antidiscrimination law. We must, therefore, infer congressional intent in less obvious ways."); *United States v. Bornstein,* 423 U.S. 303, 309–310, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976) ("There is no indication that Congress gave

any thought to the question.... But the absence of specific legislative history in no way modifies the conventional judicial duty to give faithful meaning to the language Congress adopted in the light of the evident legislative purpose in enacting the law in question.").

10. Alfred Denning, The Disciple of the Law 4 (1979).

11. *See Train v. Colorado Pub. Interest Research Group, Inc.,* 426 U.S. 1, 9–10, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976); *see also* Levi, *An Introduction to Legal Reasoning,* 15 U. Chi. L.Rev. 501, 520–23 (1948); Murphy, *Old Maxims Never Die: The "Plain–Meaning Rule" and Statutory Interpretation in the "Modern" Federal Courts,* 75 Colum. L.Rev. 1299, 1316–1317 (1975).

12. Roger J. Traynor, *Reasoning in a Circle of Law,* 56 Va. L.Rev. 739, 749 (1970).

nity of the notice to raise defenses which are already available under the law ... and that these provisions are not intended to expand the substantive rights of these parties.") We are persuaded, therefore, that the notice exception in § 7609(c)(2)(B) applies only where the assessed taxpayer "has a recognizable [legal] interest in the records summoned." *Robertson,* 843 F.Supp. at 706.[13]

## IV.

■ The IRS has not presented any evidence that the assessed taxpayer, Diamond Trade, has any legal interest in Ip's personal bank account. She contends in her affidavit that she has "no relationship with any of the entities, including Diamond Trade." E.R. at 66. The evidence brought forth by the IRS to rebut her contention and to prove a fiduciary relationship between her and Diamond Trade is contained in the Second Declaration of Venice Yaneza, which is part of the IRS's Motion to Supplement the Record on Appeal. We have considered the motion and deny it because the declaration is not part of the district court record in this specific case.

Were we to consider Yaneza's declaration, however, we would conclude that it does not supply sufficient evidence to trigger the exception to the notice requirement. Because the account is in Ip's name and she is not an employee, officer, agent or stockholder in the entity against which the tax assessment has been made, the declaration does not prove the assessed taxpayer, Diamond Trade, had the legal ownership interest mandated by clause (i). Nor does it suffice to show that Ip was a fiduciary or transferee of Diamond Trade

as required by clause (ii). A revenue officer in the collection division of the IRS, Yaneza explained that Ip acted as a liaison between the IRS and several employees of Diamond Trade and their previous attorney. Mot. Supp. R. Tab A, at 1. Yaneza also attested that Ip had deposited the proceeds from a different Hong Kong jewelry company into her account in the past. *Id.* at 2. Neither of these contentions qualify as permissible or compellable inferences that she was a fiduciary or transferee of Diamond Trade. Although the Sius may possibly be fiduciaries of Diamond Trade, Ip cannot be considered a fiduciary of Diamond Trade merely by acting as a liaison for the Sius.

A fiduciary is a person who holds something in trust for another, the word originating from the Latin, *fiduciarius,* from *fiducia,* trust, or a thing held in trust, from *fidere,* to trust. *See* Webster's Third New International Dictionary 845 (1968). The IRS definition tracks this concept precisely in Treasury Regulation § 301.7701–6(b)(1). In contrast, liaison, a French word, comes from the Latin *ligatio* (-*onis* ), a binding, from *ligatus,* past participle of *ligare,* to bind. Its general meaning today is intercommunication between persons or between units of a military force. *See id.* at 1302.

To prove that a fiduciary relationship existed between Ip and Diamond Trade, it was incumbent for the IRS to prove that she was more than a communicator for the Sius. This, it failed to do. Yaneza's declaration is mere speculation that she deposited Diamond Trade funds into her account. The revenue agent's declaration that Ip may have done so is not tantamount to an

---

**13.** The Court of Appeals for the Seventh Circuit has stated: "We agree with the Tenth Circuit['s] [unpublished opinion in *Davidson* ] that as long as the third-party summons is issued to aid in the collection of any assessed tax liability the notice exception applies." *Barmes,* 199 F.3d at 389–390. However, the court does not explain how such a sweeping statement can be justified in light of the two qualifying clauses found in § 7609(c)(2)(B), which limit "aid of the collection" to situa-

tions where the IRS is collecting from (i) a person against whom an assessment has been made or (ii) a transferee or fiduciary of the assessed person. With all due respect to our sister circuit, we are unable to accept this as a persuasive argument because its syllogism is incomplete-it consists of a conclusion without any supporting premises. We find such a conclusion improper in light of the limiting language of § 7609(c)(2)(B)(i)-(ii).

allegation that she did so in fact. Without such an affirmative representation, we may not assume, or infer, that Ip actually deposited those funds. Accordingly, we may not properly conclude that she was a fiduciary or transferee of Diamond Trade.

Because the IRS failed to present sufficient data to support that the Ip bank accounts come within the exception to the third-party notice requirement, Appellant was entitled to notice of the summons under § 7609(a), thus conferring standing to challenge the summons under § 7609(b)(2).

\* \* \*

We conclude that the district court erred in dismissing the petition for lack of jurisdiction and remand this case to the district court for further proceedings.

REVERSED AND REMANDED.

O'SCANNLAIN, Circuit Judge, specially concurring:

I concur in the eloquent and persuasive opinion of the court, which correctly interprets a difficult and opaque statute. I write separately only to note that this is a highly unusual case involving a highly unusual statute, and as such may be of only limited instructional value with respect to the enterprise of statutory interpretation as a whole.

The Supreme Court has instructed us that "[t]he plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." *United States v. Ron Pair Enters.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (internal quotation marks omitted). For the reasons set forth in the court's thorough and careful analysis, I believe that the case before us is just such a rare case.

In joining the opinion (including Part III) of the court, then, I am in no way departing from my previously expressed views regarding the proper approach to statutory interpretation in the typical case. *See, e.g., Rucker v. Davis,* 203 F.3d 627 (9th Cir.2000) ("We begin, as we must, with the express language of the statute.... Where, as here, the language of the statute is plain and unambiguous, resort to legislative history is unnecessary."); *Rumsey Indian Rancheria of Wintun Indians v. Wilson.* 64 F.3d 1250, 1257 (9th Cir.1994); *Citizens Action League v. Kizer,* 887 F.2d 1003, 1006 (9th Cir.1989) ("In construing a statute, we look first to its plain meaning.").